UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ----x
UNITED STATES OF AMERICA           :
                                   :
        - v -                      :           25-Cr-85 (JSR)
                                   :
CARL RINSCH,                       :
                                   :
        Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ----x


**MEMORANDUM OF LAW IN SUPPORT OF CARL RINSCH'S
MOTION TO DISMISS COUNTS THREE THROUGH SEVEN**


                                ARIEL WERNER
                                MICHAEL ARTHUS
                                NEIL P. KELLY
                                Federal Defenders of New York, Inc.
                                Attorneys for Defendant
                                52 Duane Street, 10th Floor
                                New York, New York 10007
                                (212) 417-8700


TO:     JAY CLAYTON
        United States Attorney
        Southern District of New York
        26 Federal Plaza, 37th Floor
        New York, New York 10278
        Attn: AUSAs David Markewitz, Timothy Capozzi, and Adam Sowlati

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

I.    INTRODUCTION ................................................................................................................1

II.   COUNTS THREE THROUGH SEVEN SHOULD BE DISMISSED BECAUSE THE STATUTE THEY ALLEGE MR. RINSCH VIOLATED – 18 U.S.C. § 1957 – IS UNCONSTITUTIONAL. ........................................................................................................1

III.  CONCLUSION ...................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Chicago v. Morales*,
 527 U.S. 41 (1999) ............................................................................................................2

*Johnson v. United States*,
 576 U.S. 591 (2015) ............................................................................................................2

*Kolender v. Lawson*,
 461 U.S. 352 (1983) ....................................................................................................... 1, 4

*Skilling v. United States*,
 561 U.S. 358 (2010) ............................................................................................................1

*United States v. Bajakajian*,
 524 U.S. 321 (1998) ............................................................................................................5

*United States v. Erker*,
 129 F.4th 966 (6th Cir. 2025) .............................................................................................4

*United States v. Loe*,
 248 F.3d 449 (5th Cir. 2001) .............................................................................................4

*United States v. Monaco*,
 194 F.3d 381 (2d Cir. 1999) ..............................................................................................3

*United States v. Ness*,
 565 F.3d 73 (2d Cir. 2009) .................................................................................................2

*United States v. Rutgard*,
 116 F.3d 1270 (9th Cir. 1997) ....................................................................................... 3, 4

*United States v. Silver*,
 864 F.3d 102 (2d Cir. 2017) ..............................................................................................4

*United States v. Silver*,
 948 F.3d 538 (2d Cir. 2020) ..............................................................................................3

*United States v. Stevens*,
 559 U.S. 460 (2010) ....................................................................................................... 3, 4

**Statutes**

18 U.S.C. § 1956 ......................................................................................................................3

18 U.S.C. § 1957 ................................................................................................................................. 1, 2

I.  **INTRODUCTION**

Counts three through seven of the indictment accuse Carl Rinsch of violating 18 U.S.C. § 1957, which criminalizes engaging in monetary transactions with property derived from unlawful activity. Those counts cannot stand. Section 1957 is unconstitutionally vague, since it lacks guidelines to direct its application, is wildly overbroad, and invites arbitrary enforcement – especially given how that statute has been interpreted in the Second Circuit. And § 1957 violates both the Fifth and Eighth Amendments, since it permits asset seizures and excessive financial penalties without due process of law. Since 18 U.S.C. § 1957 is unconstitutional both on its face and as applied to Mr. Rinsch, counts three through seven should be dismissed.

II. **COUNTS THREE THROUGH SEVEN SHOULD BE DISMISSED BECAUSE THE STATUTE THEY ALLEGE MR. RINSCH VIOLATED –18 U.S.C. § 1957 – IS UNCONSTITUTIONAL.**

Counts three through seven of the indictment accuse Mr. Rinsch of violating 18 U.S.C. § 1957 by making purchases and investments using money from bank and brokerage accounts that "consist[ed] of proceeds" of a wire fraud. Those counts cannot stand, however, because § 1957 is unconstitutional both on its face and as applied to Mr. Rinsch.

To start, § 1957 is unconstitutionally vague. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To satisfy constitutional standards, a penal statute must "define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402 (2010). The "more important" of these requirements is that the "legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) (citation omitted). Absent such guidelines, "a criminal statute may permit a standardless sweep [that] allows

policemen, prosecutors, and juries to pursue their personal predilections." *Id.* at 358 (quotation omitted).

A criminal statute may be unconstitutional on its face even if it is not unconstitutional in all its applications. *See Johnson v. United States*, 576 U.S. 591, 595-96 (2015). And a defendant may prevail on a facial vagueness challenge to a criminal law even if the law could conceivably be constitutionally applied to him. *See id.* at 595. For example, in *Johnson*, the Supreme Court held that the "indeterminacy" of ACCA's residual clause "denies fair notice" and "invites arbitrary enforcement" such that the clause is unconstitutional, even though it may have been constitutional in some of its applications. *See id.* at 597; *see also id.* at 602 (deeming provision vague even though there are "straightforward cases" under the clause and the defendant made no claim that the residual clause implicated his First Amendment rights). The Supreme Court's holdings thus "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602; *see also, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (holding anti-loitering statute unconstitutionally vague on its face).

Section 1957 fails both to give adequate notice to individuals and to provide sufficient guidance and constraints to protect against arbitrary enforcement. That statute criminalizes "knowingly" engaging "in a monetary transaction in criminally derived property of a value greater than $10,000" which was "derived from specified unlawful activity." 18 U.S.C. § 1957(a); *see also United States v. Ness*, 565 F.3d 73, 78 (2d Cir. 2009) (stating offense elements). Section 1957 has a staggering breadth – it sweeps within its scope any transaction of more than $10,000 involving the direct or indirect proceeds of numerous and varied criminal offenses. A person can be liable under § 1957, for instance, even if he was not involved in the criminal activity that generated the "derived" proceeds; even if the criminal activity generating those proceeds was remote in time; and even if he personally engaged in only lawful, legitimate activities with the proceeds. The defendant does not need to know

the kind of criminal activity involved in generating the proceeds. No person needs to have been convicted of any underlying criminal activity in generating the derived proceeds for the defendant to be liable under § 1957 for using those proceeds. *See United States v. Silver*, 948 F.3d 538, 576 (2d Cir. 2020). Nor must the underlying criminal activity take place within § 1957's limitations period; indeed, it may even have taken place before § 1957 was enacted. *See id.* (citing *United States v. Monaco*, 194 F.3d 381, 383 (2d Cir. 1999) ("The term 'proceeds of some form of unlawful activity' [used in § 1956] includes 'proceeds' that were generated by illegal activity before enactment of the statute.")). And critically, unlike its sister money laundering statute, 18 U.S.C. § 1956, the statute at issue does not require the defendant to have *any* intent to commit a crime himself or any "design of concealing criminal fruits"; rather, § 1957 applies to even "the most open, above-board transaction[s]." *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997). It is enough for criminal liability to attach that the defendant knows *some* criminal activity by *someone* led to *some* money or property at *some* point in the past, and then engages in *any* transaction involving that money or property above the $10,000 threshold.

The broad phrasing of § 1957 means that it fails to provide constitutionally adequate notice. The statute criminalizes a host of apparently innocent activities, including those far removed from the original criminal conduct from which some money or property was derived. For example, the developer who bought and then resold Al Capone's famous Miami waterfront mansion is apparently guilty of violating § 1957, since he surely would have known the sale was a transaction in "criminally derived property." *See* V.L. Hendrickson, *Al Capone's Miami Beach Mansion, Saved From Demolition, Sells for $15.5 Million*, Mansion Global (Oct. 6, 2021). The same would seem to be true for the banker who bought Jeffrey Epstein's Manhattan townhouse, if he were to resell the property or take out a mortgage. *See* Dan Mangan, *Former Goldman Sachs exec is mystery buyer of $51 million Jeffrey Epstein mansion, boosting victim fund*, CNBC (Mar. 16, 2021). The fact that the government may opt not to bring criminal

-3-

charges in such circumstances is no answer to the constitutional problem: a court cannot "uphold an unconstitutional statute merely because the Government promise[s] to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Indeed, any such assurance is only "an implicit acknowledgment of the potential constitutional problems with a more natural reading" of an overbroad statute. *Id.*

The text of § 1957 gives virtually unfettered discretion to law enforcement and prosecutors, with no governing standards or other constraints on its use. Such unfettered discretion necessarily engenders arbitrary and discriminatory enforcement. Section 1957 could conceivably be tacked on as a charge against anyone who commits a host of federal crimes and then transfers or spends the proceeds, including by simply depositing them in a bank. It therefore fails to establish the "minimal guidelines to govern law enforcement" necessary to render a criminal statute constitutional. *See Kolender*, 461 U.S. at 357-58.

The Second Circuit's construction of § 1957 exacerbates its constitutional infirmity. In both the Fifth and Ninth Circuits, to prove a violation of § 1957 the government must trace criminally derived proceeds if they have been commingled with other, legitimate funds. *See United States v. Loe*, 248 F.3d 449, 467 (5th Cir. 2001); *Rutgard*, 116 F.3d at 1292; *see also United States v. Erker*, 129 F.4th 966, 975-76 (6th Cir. 2025) (surveying circuits' varying approaches to this issue). That means that if a defendant uses an account that includes both criminal proceeds and legitimate funds, the government must show that any transaction charged as a violation of § 1957 involved the criminally derived funds.

But the Second Circuit does not require any sort of tracing.[1] *See United States v. Silver*, 864 F.3d 102, 114-15 (2d Cir. 2017) (collecting cases on issue and holding "once funds obtained from illegal activity are combined with funds from lawful activity in a single account, the 'dirty' and 'clean' funds

---

[1] The defense recognizes that a tracing requirement is foreclosed by Circuit precedent. In the defense charge requests, however, for purposes of preservation, the defense will ask the Court to impose a tracing requirement as part of the jury instructions on § 1957.

cannot be distinguished from each other"). As a result, a defendant may no longer lawfully use any of his *own* money or property that has been commingled with criminal proceeds. This means, for example, that if a defendant fraudulently obtains money, deposits $100 of that money into a bank account containing $1,000,000 of lawful funds, and then buys a $20,000 car, in the Second Circuit he would be guilty of violating § 1957. He would not be guilty in the Fifth or Ninth Circuits. The Second Circuit's interpretation of § 1957 makes the constitutional notice problem more acute, because a defendant engaging in a legitimate, above-board transaction, with no criminal intent, and with his own lawful funds, can still violate the statute.

The Second Circuit's interpretation renders § 1957 violative of the Fifth and Eighth Amendments in another way, as well. Essentially, without any process, the government can effectuate a seizure and freeze on an uncapped portion of a defendant's assets, regardless of whether those assets themselves were involved in or derived from criminal activity. Section 1957 prevents a defendant from using his own money, even if it came from lawful sources and is being used for lawful purposes, if the money has been commingled with even a fractional amount of illicit funds. Under the Fifth Amendment, the government may not seize a defendant's property in this manner, without any due process. And under the Eighth Amendment, such a financial penalty acts as an unconstitutionally excessive fine. *Cf. United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (holding that forfeiture of entire amount involved in unreported currency offense was so disproportionate that it violated the Eighth Amendment's excessive fines clause).

These realities highlight how § 1957 is unconstitutional not only on its face but also as specifically applied to Mr. Rinsch. Even assuming, for argument's sake, that the government could prove Mr. Rinsch committed the wire fraud charged in count one, he could not and would not have been on notice that openly transferring money among his own accounts – with no intent to conceal those funds – or that spending his own, legitimate money also in those accounts, would somehow

constitute an additional, separate crime.  And by permitting the government to potentially seize and freeze any of Mr. Rinsch's own money that happens to have been commingled with the alleged fraud proceeds, § 1957 infringes his right to dispose of and direct his own lawful assets, without adequate notice or process.

## III.    CONCLUSION

Section 1957 is unconstitutional both on its face and as applied to Mr. Rinsch.  The Court should, therefore, dismiss counts three through seven of the indictment.

Dated: August 18, 2025　　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　_____/s/_____

　　　　　　　　　　　　　　　　　　　　Ariel Werner
　　　　　　　　　　　　　　　　　　　　Michael Arthus
　　　　　　　　　　　　　　　　　　　　Neil P. Kelly
　　　　　　　　　　　　　　　　　　　　Federal Defenders of New York
　　　　　　　　　　　　　　　　　　　　52 Duane Street, 10th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10007
　　　　　　　　　　　　　　　　　　　　(212) 417-8700