UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ----x
UNITED STATES OF AMERICA                :
                                        :
        - v -                           :         **25-Cr-85 (JSR)**
                                        :
CARL RINSCH**,**                        :
                                        :
        Defendant.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ----x


**MEMORANDUM OF LAW IN SUPPORT OF CARL RINSCH'S
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE**


                                                ARIEL WERNER
                                                MICHAEL ARTHUS
                                                NEIL P. KELLY
                                                Federal Defenders of New York, Inc.
                                                Attorneys for Defendant
                                                52 Duane Street, 10th Floor
                                                New York, New York 10007
                                                (212) 417-8700


TO:       JAY CLAYTON
             United States Attorney
             Southern District of New York
             26 Federal Plaza, 37th Floor
             New York, New York 10278
             Attn: AUSAs David Markewitz, Timothy Capozzi, and Adam Sowlati

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ............................................................................................................... 1

II. THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE .................. 1

    A. None of the essential conduct underlying the charged crimes occurred in the Southern District of New York ................................................................................ 2

    B. Mr. Rinsch lacks substantial contacts with the Southern District of New York ............ 5

III. IF THE COURT DOES NOT DISMISS THE INDICTMENT, IT SHOULD ALTERNATIVELY TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA ............................................................................ 6

    A. Mr. Rinsch will suffer unnecessary hardship from being tried in the Southern District of New York, nearly three thousand miles from his home ................ 7

    B. The Central District of California is the "nerve center" of the charged conduct ........... 9

    C. The remaining *Platt* factors favor transfer to the Central District of California .......... 10

IV. CONCLUSION .................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Platt v. Minn. Mining & Mfg. Co.*,
   376 U.S. 240 (1964) ............................................................................................... 7

*United States v. Beech-Nut Nutrition Corp.*,
   871 F.2d 1181 (2d Cir. 1989) ................................................................................ 2

*United States v. Cabrales*,
   524 U.S. 1 (1998) ........................................................................................... 1, 2, 5

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012) .................................................................................... 2

*United States v. DeJesus*,
   2017 WL 3738783 (S.D.N.Y. Aug. 30, 2017) ..................................................... 2

*United States v. Eisenberg*,
   2025 WL 1489248 (S.D.N.Y. May 23, 2025) .................................................. 4, 5

*United States v. Hanley*,
   1995 WL 60019 (S.D.N.Y. Feb. 10, 1995) ......................................................... 9

*United States v. Kim*,
   246 F.3d 186 (2d Cir. 2001) .................................................................................. 2

*United States v. Layne*,
   2005 WL 1009765 (S.D.N.Y. May 2, 2005) ....................................................... 8

*United States v. Martino*,
   2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) ............................................. 8, 9, 11

*United States v. Novak*,
   443 F.3d 150 (2d Cir. 2006) .................................................................................. 2

*United States v. Ohran*,
   2000 WL 620217 (S.D.N.Y. May 12, 2000) ................................................ 7, 8, 9

*United States v. Peterson*,
   357 F. Supp. 2d 748 (S.D.N.Y. 2005) .................................................................. 4

*United States v. Posner*,
   549 F. Supp. 475 (S.D.N.Y. 1982) ................................................................. 9, 10

*United States v. Ramirez*,
    420 F.3d 134 (2d Cir. 2005) ............................................................................................. 2

*United States v. Ramos-Fernandez*,
    48 F. App'x 340 (2d Cir. 2002) ........................................................................................ 2

*United States v. Reed*,
    773 F.2d 477 (2d Cir. 1985) ............................................................................................. 6

*United States v. Royer*,
    549 F.3d 886 (2d Cir. 2008) ............................................................................................. 6

*United States v. Russell*,
    582 F. Supp. 660 (S.D.N.Y. 1984) ................................................................................... 8

*United States v. Rutigliano*,
    790 F.3d 389 (2d Cir. 2015) ..................................................................................... 2, 4, 6

*United States v. Spy Factory, Inc.*,
    951 F. Supp. 450 (S.D.N.Y. 1997) ................................................................................... 8

*United States v. Tomasetta*,
    2012 WL 2064978 (S.D.N.Y. June 6, 2012) .................................................................... 4

*United States v. Tzolov*,
    642 F.3d 314 (2d Cir. 2011) ......................................................................................... 2, 4

*United States v. Valdes*,
    2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) .................................................................... 9

**Statutes**

18 U.S.C. § 1956(i) ................................................................................................................... 5

18 U.S.C. § 3237(a) .................................................................................................................. 2

**Other**

Fed. R. Crim. P. 12(b)(3)(A) .................................................................................................... 2

Fed. R. Crim. P. 12.2 ........................................................................................................... 8, 10

Fed. R. Crim. P. 18 ................................................................................................................... 1

Fed. R. Crim. P. 21(b) ........................................................................................................... 6, 7

U.S. Const. amend. VI .............................................................................................................. 1

I. **INTRODUCTION**

The charges against Carl Rinsch – which relate to a production deal with the streaming giant Netflix – have no meaningful connection to the Southern District of New York.  During the time period alleged in the indictment, Mr. Rinsch neither lived nor worked in New York.  His production company, Home VFX, was based in Los Angeles.  So were his counterparts at Netflix, the purported victim of his alleged actions.  No acts relevant to the alleged fraud or money laundering were committed here; no scenes from Mr. Rinsch's television show, *White Horse*, were filmed here; no supposed misrepresentations were made here.  Aside from the fact that the saga of *White Horse*'s beleaguered production was publicized in the *New York Times*, it is inconceivable why the U.S. Attorney's Office for the Southern District of New York is prosecuting this case at all.

This case should not have been brought anywhere.  But setting aside the myriad deficiencies in this baseless prosecution, if criminal charges are going to be pursued, they must be brought in the Central District of California.  Mr. Rinsch, who is now indigent, lives in California and cannot meaningfully participate in his defense from three time zones and nearly three thousand miles away.  Counsel – public defenders in New York – cannot provide effective assistance a continent away from Mr. Rinsch, all the relevant witnesses, and several critical exhibits.  And no public interest is served by prosecuting Mr. Rinsch in a district where the relevant witnesses do not live and in which no alleged harm occurred.  For all the reasons below, the Court should either dismiss the indictment for lack of venue or transfer venue to the Central District of California.

II. **THE INDICTMENT SHOULD BE DISMISSED FOR LACK OF VENUE.**

A criminal defendant has the constitutional right to be tried in the district where the alleged crime was committed.  U.S. Const. amend. VI; *see also* Fed. R. Crim. P. 18; *United States v. Cabrales*, 524 U.S. 1, 6 (1998).  In other words, a defendant may only constitutionally be prosecuted in the district

where the crime was "begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Coplan*, 703 F.3d 46, 76-77 (2d Cir. 2012).

To determine where venue lies for a particular charge, a court must identify the essential conduct elements of the offense and then determine where the acts constituting those elements were purportedly committed. *See, e.g.*, *Cabrales*, 524 U.S. at 6-7; *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011). Venue is proper only in the district where the essential conduct occurred; venue does not lie in districts where the defendant took steps merely "preparatory" or "ancillary" to the charged crime, or where unforeseen "ministerial" acts occurred. *See, e.g.*, *United States v. Ramirez*, 420 F.3d 134, 141 (2d Cir. 2005); *United States v. Kim*, 246 F.3d 186, 193 (2d Cir. 2001); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989).

Challenges to venue are appropriately raised in a pretrial motion to dismiss. Fed. R. Crim. P. 12(b)(3)(A); *see United States v. Novak*, 443 F.3d 150, 161 (2d Cir. 2006); *United States v. Ramos-Fernandez*, 48 F. App'x 340, 342 (2d Cir. 2002) (upholding grant of motion to dismiss for lack of venue). At the pretrial motion stage, the government must "allege with specificity that the charged acts support venue in this district," *United States v. DeJesus*, 2017 WL 3738783, at *1 (S.D.N.Y. Aug. 30, 2017) (citation omitted), and establish that venue is proper as to each count. *See United States v. Rutigliano*, 790 F.3d 389, 396 (2d Cir. 2015).

Here, the government cannot meet its burden to establish that venue is proper in the Southern District of New York. None of the essential conduct occurred in this District. There is, at most, an ancillary connection to the Southern District, while prosecuting Mr. Rinsch here would cause him significant prejudice. Accordingly, the Court should dismiss the indictment due to lack of venue.

### A. None of the essential conduct underlying the charged crimes occurred in the Southern District of New York.

Mr. Rinsch is an award-winning filmmaker who devoted nearly a decade of his career to creating and filming a television series called *White Horse*. With support from early investors, Mr.

Rinsch completed six episodes before reaching out to major studios in pursuit of a deal to fund continued production and bring the show to audiences worldwide. In 2018, after a bidding war, Mr. Rinsch entered into a contract with Netflix, under which he would finish filming and producing the first season of *White Horse* and receive compensation upon achieving certain milestones: commencement of photography on the remaining episodes, completion of principal photography for the first season, and delivery of the episodes comprising the first season. Netflix, meanwhile, would have the right to stream *White Horse* on its platform. After contracting with Netflix, Mr. Rinsch continued shooting the first season of *White Horse* in Europe and South America. The production was sometimes challenging – there were cost overruns and script rewrites and issues with foreign vendors. In early 2020, Mr. Rinsch notified Netflix that he had completed principal photography on the first season and required additional funds to continue with a second. Negotiations ensued between Netflix, Mr. Rinsch, and his attorney, culminating in a March 2020 email exchange in which Netflix agreed to pay Mr. Rinsch $11 million. That email exchange lies at the heart of the government's allegations of wire fraud and money laundering: the government claims that Mr. Rinsch intentionally misrepresented that he planned to use the money Netflix wired to him for continued production on *White Horse* but instead transferred that money between different bank and brokerage accounts and used it for financial investments and luxury purchases.

      Mr. Rinsch disputes the government's allegations. But even assuming, for argument's sake, their truth, none of the crimes with which Mr. Rinsch is charged – wire fraud, money laundering, and engaging in monetary transactions in property derived from unlawful activities – were begun, committed, or completed in the Southern District of New York. At the time of the alleged offenses, Mr. Rinsch, his production company Home VFX, Netflix, and its relevant agents and representatives were all located outside of New York. Mr. Rinsch lived in California and traveled internationally to film the show; his ex-wife and co-producer resided in California; his attorney, financial advisor, and

accountant were based in California; Netflix was a Delaware corporation headquartered in California; and Netflix's representatives and agents involved in the transaction at issue worked in that state.

The indictment does not sufficiently allege that criminal conduct occurred in the Southern District of New York, nor does it otherwise include adequate factual allegations to establish venue. *See United States v. Peterson*, 357 F. Supp. 2d 748, 751-52 (S.D.N.Y. 2005) (describing government's pretrial burden). On the wire fraud charge, the indictment avers that Mr. Rinsch caused "others to send and receive emails and other electronic communications to and from the Southern District of New York." Indictment ¶ 16. But the indictment does not identify what those communications were, and it is unclear how they would give rise to venue. For example, the government does not allege that Mr. Rinsch made any false statements in the Southern District of New York or caused any false statements to be transmitted into the District – the central offense conduct. Nor does it allege that Netflix's $11 million payment in March 2020 originated in, ended at, or was transferred through New York. *Cf. Rutigliano*, 790 F.3d at 397 (opining that venue would lie where proceeds of fraud scheme were transferred).

Even if some stray electronic communication passed through New York at some point, the government has not sufficiently alleged that any such hypothetical communication was part of the essential criminal conduct underlying the wire fraud count, rather than the sort of ancillary or preparatory communication that would be legally insufficient to give rise to venue. *See, e.g.*, *Tzolov*, 642 F.3d at 318-19 (holding that government failed to prove venue for substantive fraud charge where defendant traveled through district on way to solicit investors, but did not send false or misleading information into or out of district); *United States v. Tomasetta*, 2012 WL 2064978, at *3-4 (S.D.N.Y. June 6, 2012) (finding no venue for fraud charge where there was no evidence that defendant made false statements or otherwise committed substantive fraud in New York); *see also United States v. Eisenberg*, 2025 WL 1489248, at *21 (S.D.N.Y. May 23, 2025) (although government presented some evidence

of wires coming into New York, those wires were not part of the "'essential conduct' underlying the charged offense" and were thus insufficient to establish venue). That some communication ancillary to the charged fraud might have passed through New York at some point is woefully insufficient to establish venue for allegations that are indisputably centered in California.

The indictment likewise fails to adequately allege venue for the money laundering and transaction charges. A money laundering offense may be tried in any district where the charged monetary transaction was conducted or where the underlying criminal activity took place "if the defendant participated in the transfer of the proceeds … from that district to the district where" the monetary transaction took place. 18 U.S.C. § 1956(i); *see also Cabrales*, 524 U.S. at 6-7. In other words, even if the government were able to establish venue for the charged wire fraud scheme in New York, that alone would not necessarily give rise to venue for the money laundering or transactional offenses. The government must prove that the relevant laundering or transactional activity took place in the Southern District of New York or that Mr. Rinsch participated in transferring funds from New York for the purpose of laundering.

Counts two through seven of the indictment, however, are devoid of *any* factual allegations supporting venue in New York. The indictment does not allege that any relevant transfers or other financial transactions were conducted in this District. *See* Indict. ¶¶ 18, 20, 22, 24, 26, 28. The government cannot establish venue without pleading any facts related to that constitutional requirement at all.

### B.  Mr. Rinsch lacks substantial contacts with the Southern District of New York.

Beyond the lack of any meaningful factual connection between the allegations and the Southern District of New York, Mr. Rinsch will be prejudiced and face significant hardship if he is tried in this District, as discussed below. *See infra*, Pt. III. As a result, even some minimal activity in or connection to this District would not be sufficient to show venue. Instead, the government must

satisfy the Second Circuit's "substantial contacts" test. *See, e.g.*, *Rutigliano*, 790 F.3d at 399 (explaining that Circuit applies this test to determine if venue is proper when defendant argues that "prosecution in the contested district will result in a hardship to him, prejudice him, or undermine the fairness of his trial"); *United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008) (discussing test); *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985) (same). That Mr. Rinsch lacks substantial contacts with the Southern District of New York further undermines the government's claim of venue.

Under the substantial contacts test, a court must consider the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the charged criminal conduct, and the suitability of each district for accurate fact finding. *See Reed*, 773 F.2d at 481. Those factors overlap with those a court considers in transferring venue under Federal Rule of Criminal Procedure 21(b).

Here, all of the substantial contacts factors militate against permitting Mr. Rinsch's prosecution in this District. Even if the government could show some tangential connection between this case and the Southern District of New York, Mr. Rinsch has no connection to this District: he does not live here, he did not commit any alleged criminal act here, this is not the site of the charged crime, none of the key witnesses reside in New York, the alleged crime's effects were not felt here, and this is not the best or most convenient District to try this matter. *See infra*, Pt. III. Under the Second Circuit's substantial contacts framework, then, venue is not proper in the Southern District of New York.

### III. IF THE COURT DOES NOT DISMISS THE INDICTMENT, IT SHOULD ALTERNATIVELY TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA.

If the Court declines to dismiss the indictment for lack of venue, it should transfer this case to the place where the alleged criminal conduct allegedly occurred: the Central District of California. That is where Mr. Rinsch lives, where most of the events giving rise to the charges are alleged to have occurred, and where most of the potential witnesses reside. By contrast, the Southern District of New

York has no meaningful connection to this case, and being tried here would result in substantial hardship and prejudice to Mr. Rinsch.

Pursuant to Federal Rule of Criminal Procedure 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding … to another district for the convenience of the parties, any victim, and witnesses, and in the interest of justice." The venue transfer rule reflects longstanding principles of constitutional equity: "our forefathers included venue provisions in the Constitution in both Article III and the Sixth Amendment to ensure that citizens would not be dragged to distant places to stand trial." *United States v. Ohran*, 2000 WL 620217, at *1 (S.D.N.Y. May 12, 2000). The fundamental question under Rule 21(b) is not simply where a prosecution may be brought, but "[w]here, in fairness, should the trial take place?" *Id.* at *2.

This Court has broad discretion to transfer venue. In exercising this discretion, the Court must consider the so-called *Platt* factors: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records to be involved; (5) the disruption of a defendant's business unless the case is transferred; (6) the expense to the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district involved; and (10) any other special elements which might affect the transfer. *See Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964). These factors overwhelmingly support transferring venue to the Central District of California.

### A. Mr. Rinsch will suffer unnecessary hardship from being tried in the Southern District of New York, nearly three thousand miles from his home.

Mr. Rinsch lives in California. He grew up there, has resided there for years, and lived there during the time period alleged in the indictment (except when filming overseas). By contrast, he has basically no ties to New York: none of his family lives here and he has no property here. Trying Mr. Rinsch in New York – nearly three thousand miles from his home – for alleged conduct that did not even occur here would be deeply prejudicial.

A defendant's location is the most significant *Platt* factor, and courts have emphasized the importance of trying a defendant in his district of residence to prevent hardship to him. "[A]s a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456 (S.D.N.Y. 1997) (Sotomayor, J.); *see also, e.g.*, *United States v. Layne*, 2005 WL 1009765, at *2 (S.D.N.Y. May 2, 2005) (courts give "greater weight to the defendant's interest in being tried in the district of his residence than to any other factor") (quotation omitted); *Ohran*, 2000 WL 620217, at *3 (same); *United States v. Martino*, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000) (same); *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) (same).

Facing trial on the opposite side of the country has already posed a severe hardship for Mr. Rinsch. He is indigent, unemployed, represented by public defenders, and subject to a multi-million-dollar civil judgment that a California arbitrator imposed in 2024. He does not have the funds to travel to New York regularly to meet with counsel here, trips that require costly plane tickets and hotel stays in one of the most expensive cities in the world. His inability to have in-person meetings with counsel – whom he has met in-person only twice – is impeding his ability to consult with his attorneys and to effectively prepare for trial, especially in a case involving nearly a million of pages of discovery and terabytes of data, substantial portions of which are marked as "Attorney's Possession Only." The defense, moreover, is serving Rule 12.2 notice, which by its very nature highlights the need for in-person rather than telephonic meetings with counsel. Mr. Rinsch's limited ability to meet in-person with counsel located on the other side of the country is undermining his constitutional right to present a defense  Mr. Rinsch would have better access to appointed counsel in California, and it would be considerably easier for him to work with counsel and meaningfully participate in his own defense if he could have regular in-person meetings with his lawyers and experts. In this respect, it is important to note – as discussed below – that as public defenders in a period of federal budgetary crisis, Mr. Rinsch's counsel lack funds to travel to California to meet with him in-person.

Making matters worse, this trial is expected to last for several weeks. Mr. Rinsch has no place to stay in New York during that time, nor the resources to easily secure temporary housing. None of this would be an issue if he were being tried in his home district in California – the place where most of the government's witnesses live and all the relevant evidence originated. *See, e.g.*, *Martino*, 2000 WL 1843233, at *7 (transferring venue, in part, because extended New York trial would impose a "substantial financial burden" on defendant, who would be forced to "pay for lodging and transportation expenses on her own behalf, as well as on behalf" of any out of state defense witnesses).

The entire purpose of the constitutional venue requirement is "to ensure that citizens would not be dragged to distant places to stand trial." *Ohran*, 2000 WL 620217, at *1. Yet that is precisely the harm to which the government is subjecting Mr. Rinsch – prosecution in a distant district where no relevant acts occurred. For that reason alone, transferring venue is proper.

**B. The Central District of California is the "nerve center" of the charged conduct.**

In addition to Mr. Rinsch's lack of ties to New York, transfer to the Central District of California would be appropriate because that District is the "nerve center" of the alleged offenses. This is a Hollywood story. Los Angeles is where the events that will be at issue in the trial principally took place; it is where the alleged victim, Netflix, is headquartered, and where its agents and representatives work; it is where the most important witnesses live. It is the only convenient place for this trial – this case could not have a stronger connection to California or a weaker connection to New York. Those considerations carry "considerable weight," and strongly favor transfer to California. *See, e.g.*, *United States v. Valdes*, 2006 WL 738403, at *6 (S.D.N.Y. Mar. 21, 2006) (ordering transfer based on location of defendants, witnesses, and relevant events); *United States v. Hanley*, 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995) (ordering transfer to California because defendant and multiple witnesses resided there and California was the "nerve center" of the case); *United States v. Posner*, 549

F. Supp. 475, 480 (S.D.N.Y. 1982) (ordering transfer to Florida where case was "in every significant aspect" an "inherently Florida case").

### C. The remaining *Platt* factors favor transfer to the Central District of California.

The remaining *Platt* factors also favor transfer or are, at worst, neutral. For instance, the bulk of relevant documents, records, and evidence are all located in California – including raw footage related to *White Horse*. The docket in the Central District of California should be able to accommodate Mr. Rinsch's trial. There are able federal prosecutors and Federal Defenders in that District, and Mr. Rinsch will be equally entitled to appointed counsel in California as here. Indeed, he was appointed counsel from the Los Angeles Federal Defenders' office for his presentment, and he will have a greater ability to work with counsel located closer to home.

In this respect, it cannot be understated just how severely being prosecuted in New York is undermining – and will continue to undermine – Mr. Rinsch's Sixth Amendment right to the effective assistance of counsel. Mr. Rinsch's counsel – federal public defenders in New York – are not financially or logistically able to make trips to California to investigate his case, interview witnesses, or meet with Mr. Rinsch in person. *See* Nate Raymond, *US House budget threatens over 600 public defender jobs, judiciary warns*, Reuters (July 30, 2025), https://www.reuters.com/legal/government/us-house-budget-threatens-over-600-public-defender-jobs-judiciary-warns-2025-07-30/. Counsel is attempting to effectively defend Mr. Rinsch remotely, through phone and video calls conducted from three time zones away and thousands of miles from potential defense exhibits and witnesses. If Mr. Rinsch had counsel in California, his attorneys would be able to afford him the type of representation the Constitution demands: in-person meetings, the use of investigators to conduct in-person interviews of witnesses, and the retention of local experts for matters including Mr. Rinsch's Rule 12.2 defense. Those resources are simply not available to Mr. Rinsch through appointed counsel thousands of miles away from the "nerve center" of the alleged conduct.

By contrast, there is practically no *Platt* factor that favors prosecuting Mr. Rinsch in the Southern District of New York. At most, the government may incur some expense in transferring the case, but it is "in a better position to bear such an expense" than Mr. Rinsch. *See Martino*, 2000 WL 1843233, at *7. Any additional expense would also be nothing more than a product of the government's own ill-advised decision to initiate this prosecution in a remote location with no meaningful connection to the charged offenses in the first place.

## IV.    CONCLUSION

Mr. Rinsch is a lifelong California resident who is being accused of crimes allegedly committed in California against a California corporation. The most relevant witnesses and evidence are all located in California. There is no reason why Mr. Rinsch can or should be prosecuted in the Southern District of New York, thousands of miles from both his home and from the place where the alleged conduct took place.

The Court should, therefore, either dismiss the indictment or transfer venue to the Central District of California.

Dated: August 18, 2025  
      New York, New York

Respectfully submitted,

_____/s/_____

Ariel Werner  
Michael Arthus  
Neil P. Kelly  
Federal Defenders of New York  
52 Duane Street, 10th Floor  
New York, NY 10007  
(212) 417-8700

-11-