UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

CARL ERIK RINSCH,

Defendant.

---

25 Cr. 85 (JSR)

**THE GOVERNMENT'S MOTIONS *IN LIMINE***

JAY CLAYTON
United States Attorney for the
Southern District of New York

Timothy Capozzi
David Markewitz
Adam Sowlati
Assistant United States Attorneys
 *Of Counsel*

### Table of Contents

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ........................................................................................................... 1

ARGUMENT ............................................................................................................... 3

I.    Statements by Rinsch and his Agents, as Well as Contemporaneous
      Meeting Notes Prepared by a Financial Advisor, are Admissible for their Truth. ............ 3

      A.    Applicable Law ........................................................................................ 3

            1.    The Rule Against Hearsay ............................................................... 3

            2.    Rule 801(d)(2) .............................................................................. 4

            3.    Rule 803(6) .................................................................................. 4

      B.    Discussion .............................................................................................. 5

            1.    Rinsch's Own Statements ............................................................... 5

            2.    Statements of Rinsch's Agents or Employees ........................................ 6

            3.    Notes of Calls with Financial Advisor-1 ............................................... 8

II.   Certain Evidence is Admissible as Direct Evidence or Under Rule 404(b) .................... 10

      A.    Applicable Law ........................................................................................ 10

            1.    Direct Evidence ............................................................................ 10

            2.    Rule 404(b) ................................................................................. 11

            3.    Rule 403 ..................................................................................... 11

      B.    Discussion .............................................................................................. 12

            1.    Tax Filings .................................................................................. 12

            2.    Spending of Fraud Proceeds After 2020 .............................................. 14

            3.    Statements in the Divorce Proceeding ................................................ 17

III.  The Court Should Preclude the Defendant from Introducing Evidence
      of a Diminished Capacity Defense .......................................................................... 18

IV.   The Court Should Exclude Claims that the Presence of Attorneys and/or
      Accountants Is Relevant to Rinsch's Intent Absent a Formal Advice of
      Counsel Defense ............................................................................................... 20

V.    The Court Should Exclude Evidence and Claims that Streaming Company-1
      was Negligent or Failed to Conduct Adequate Due Diligence ......................................... 22

VI.   The Court Should Limit the Scope of Cross Examination of Individual-1
      Regarding Her Pending Divorce Proceedings with the Defendant .................................. 24

CONCLUSION ............................................................................................................ 25

## Table of Authorities

**Pages**

**Cases**

*Attis v. Solow Realty Devel. Co.*,
    522 F. Supp. 2d 623 (S.D.N.Y. 2007) ................................................................... 7

*Feis v. United States*,
    394 F. App'x 797 (2d Cir. 2010) ........................................................................... 4

*George v. Celotex Corp.*,
    914 F.2d 26 (2d Cir. 1990) .................................................................................... 4

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696 (RWS), 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ............... 10

*In re Reserve Fund Sec. Litig.*,
    09 Civ. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) ....................... 6

*Kousisis v. United States*,
    145 S. Ct. 1382 (2025) .......................................................................................... 15

*Martha Graham Sch. & Dance Found., Inc. v.*
    *Martha Graham Cent. Of Contemp. Dance, Inc.*,
    380 F.3d 624 (2d Cir. 2004) .................................................................................. 7

*Pappas v. Middle Earth Condo. Ass'n*,
    963 F.2d 534 (2d Cir. 1992) .................................................................................. 4

*Park W. Radiology v. CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................... 25

*S.E.C. v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................................... 20, 22

*SEC v. Stoker*,
    No. 11 Civ. 7388 (JSR) (S.D.N.Y. July 23, 2012) ................................................. 21

*United States v. Adelekan*,
    567 F. Supp. 3d 459 (S.D.N.Y. 2021) .................................................................... 22

*United States v. Adelglass*,
    No. 23-6248, 2024 WL 5087519 (2d Cir. Dec. 12, 2024) ...................................... 13, 16

*United States v. Ahmed*,
    No. 14 Cr. 277 (DLI), 2016 WL 8732355 (E.D.N.Y. June 24, 2016) ..................... 22

*United States v. Amanat*,
    No. 15 Cr. 536 (PGG), 2021 WL 3862898 (S.D.N.Y. Aug. 30, 2021) .................... 16

*United States v. Amato*,
    356 F.3d 216 (2d Cir. 2004) .................................................................................. 6

*United States v. Amico*,
    486 F.3d 764 (2d Cir. 2007) .................................................................................. 22

*United States v. Arrington,*
  867 F.2d 122 (2d Cir. 1989)........................................................................... 6

*United States v. Bankman-Fried,*
  680 F. Supp. 3d 289 (S.D.N.Y. 2023)......................................................... 15

*United States v. Bankman-Fried,*
  No. S5 22-CR-0673 (LAK), 2024 WL 477043 (S.D.N.Y. Feb. 7, 2024) .......................... 20, 21

*United States v. Bergstein,*
  788 F. App'x 742 (2d Cir. 2019)................................................................ 13

*United States v. Carboni,*
  204 F.3d 39 (2d Cir. 2000)........................................................................ 10

*United States v. Coonan,*
  938 F.2d 1553 (2d Cir. 1991)................................................................ 10, 11

*United States v. Daly,*
  842 F.2d 1380 (2d Cir. 1988)..................................................................... 11

*United States v. Dupre,*
  462 F.3d 131 (2d Cir. 2006)........................................................................ 5

*United States v. Dupree,*
  870 F.3d 62 (2d Cir. 2017).......................................................................... 11

*United States v. Evangelista,*
  122 F.3d 112 (2d Cir.1997)........................................................................ 20

*United States v. Figueroa,*
  No. 23 Cr. 161 (MAD), 2023 WL 8373566 (S.D.N.Y. Dec. 4, 2023) ..................... 9

*United States v. Figueroa,*
  618 F.2d 934 (2d Cir. 1980)........................................................................ 12

*United States v. Franzone,*
  No. 21 Cr. 446 (VSB), 2025 WL 1094496 (S.D.N.Y. Apr. 11, 2025).................... 16

*United States v. Frenkel,*
  682 F. App'x 20 (2d Cir. 2017)................................................................... 24

*United States v. Gelzer,*
  50 F.3d 1133 (2d Cir. 1995)........................................................................ 12

*United States v. Gonzalez,*
  110 F.3d 936 (2d Cir. 1997)........................................................................ 10

*United States v. Hsu,*
  669 F.3d 112 (2d Cir. 2012)........................................................................ 15

*United States v. Jabar,*
  19 F.4th 66 (2d Cir. 2021).......................................................................... 15

*United States v. Jeffers,*
  402 F. App'x 601 (2d Cir. 2010)................................................................. 25

*United States v. Jones*,
No. 16 Cr. 553 (AJN), 2018 WL 1115778 (S.D.N.Y. Feb. 27, 2018) ..................................... 19

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010) ........................................................................................... 5, 9

*United States v. Kaplan*,
No. 23 Cr. 293 (JMA), 2025 WL 2200539 (E.D.N.Y. Aug. 1, 2025) ..................................... 16

*United States v. Kelley*,
305 F. App'x 705 (2d Cir. 2009) ............................................................................................. 8

*United States v. Kelly*,
551 F.3d 171 (2d Cir. 2009) .................................................................................................. 16

*United States v. Lesniewski*,
11 Cr. 1091 (VM), 2013 WL 3776235 (S.D.N.Y. July 12, 2013),
*aff'd*, 614 F. App'x 542 (2d Cir. 2015) ................................................................................ 22

*United States v. Males*,
459 F.3d 154 (2d Cir. 2006) .................................................................................................. 15

*United States v. Margiotta*,
662 F.2d 131 (2d Cir. 1981) .................................................................................................... 6

*United States v. Mattera*,
No. 24 Cr. 117 (LAP) (S.D.N.Y.) ........................................................................................... 21

*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984) ...................................................................................................... 6

*United States v. Mostafa*,
16 F. Supp. 3d 236 (S.D.N.Y. 2014) ...................................................................................... 14

*United States v. Nekritin*,
No. 10 Cr. 491 (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ................................. 23

*United States v. Neumann*,
No. 21 Cr. 439 (NSR), 2023 WL 8700974 (S.D.N.Y. Dec. 14, 2023) ..................................... 8

*United States v. Petit*,
No. 19 Cr. 850 (JSR) (S.D.N.Y.) ........................................................................................... 22

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) .................................................................................................. 10

*United States v. Raines*,
No. 22 Cr. 18 (NSR), 2023 WL 6211980 (S.D.N.Y. Sept. 25, 2023) ..................................... 16

*United States v. Ramirez*,
894 F.2d 565 (2d Cir. 1990) .................................................................................................. 11

*United States v. Riox*,
97 F.3d 648 (2d Cir. 1996) ...................................................................................................... 6

*United States v. Roldan-Zapata*,
916 F.2d 795 (2d Cir. 1990) ........................................................................................... 11, 16

*United States v. Russo,*
   302 F.3d 37 (2d Cir. 2002) ................................................................. 5

*United States v. Scully,*
   877 F.3d 464 (2d Cir. 2017) ............................................................. 20

*United States v. Shea,*
   No. 20 Cr. 412 (AT) (S.D.N.Y.) ...................................................... 22

*United States v. Snype,*
   441 F.3d 119 (2d Cir. 2006) ............................................................. 12

*United States v. Stein,*
   S1 05 Cr. 888 (LAK), 2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007) ......... 5

*United States v. Strother,*
   49 F.3d 869 (2d Cir. 1995) ................................................................. 5

*United States v. Tagliaferri,*
   No. 13 Cr. 115 (RA) (S.D.N.Y. 2014) ............................................. 21

*United States v. Thomas,*
   377 F.3d 232 (2d Cir. 2004) ............................................................. 23

*United States v. Tussa,*
   816 F.2d 58 (2d Cir. 1987) ............................................................... 12

*United States v. Valenti,*
   60 F.3d 941 (2d Cir. 1995) ............................................................... 13

*United States v. Weaver,*
   860 F.3d 90 (2d Cir. 2017) ............................................................... 22

*United States v. Westcott,*
   83 F.3d 1354 (11th Cir. 1996) ......................................................... 19

*United States v. Zackson,*
   12 F.3d 1178 (2d Cir. 1993) ............................................................. 11

**Statutes**

18 U.S.C. § 17 .................................................................................... 19

**Rules**

FED. R. EVID. 403 ......................................................................... 13, 28

FED. R. EVID. 801 ..................................................................... 3, 4, 6, 11

FED. R. EVID. 802 ............................................................................. 4

FED. R. EVID. 803 ........................................................................... 10

## PRELIMINARY STATEMENT

In advance of the trial of defendant Carl Erik Rinsch, the Government respectfully submits the following motions *in limine*: (1) the Court should admit for their truth statements by Rinsch and his agents, including those contained in contemporaneous notes made by a financial advisor of calls with Rinsch; (2) as direct evidence or under Rule 404(b), the Court should admit evidence related to Rinsch's tax filings in 2020 and the surrounding years, Rinsch's spending following November 2020, and statements Rinsch made in his divorce proceedings about his financial status; (3) ██████████████████████████████████████████████████████ (4) the Court should preclude Rinsch from suggesting that the involvement of attorneys or accountants in certain decision making demonstrates that he lacked criminal intent; (5) the Court should preclude Rinsch from arguing or adducing evidence that the victim here was negligent, gullible, or insufficiently vigilant; and (6) the Court should limit cross examination of Rinsch's wife regarding their divorce proceedings.

## BACKGROUND

The evidence at trial will show that Rinsch engaged in a scheme to defraud a streaming company ("Streaming Company-1") out of $11 million and laundered his criminal proceeds.

Rinsch is a film and television creator. In or about 2018, Rinsch, through his production company, entered into an agreement with Streaming Company-1 to give Streaming Company-1 the rights to a science-fiction television show he was creating called *White Horse*. As *White Horse* was only partially shot at that point, the parties' contract required Rinsch to complete the show's production. In exchange, Streaming Company-1 agreed to pay Rinsch tens of millions of dollars.

Starting around the end of 2019, Rinsch began claiming that he needed additional money from Streaming Company-1 to finish the show. That demand kicked off weeks of negotiations

between the parties. During those discussions, Streaming Company-1 made clear that if it agreed to give Rinsch more money, he could not simply use that additional funding as he saw fit—say, to give himself a larger salary. Rinsch would instead need to promise to use the money only for certain enumerated show-related tasks, including editing footage that he had already shot. Rinsch agreed. And so, on or about March 6, 2020, Streaming Company-1 wired approximately $11 million to a bank account in the name of Rinsch's production company (the "March Payment").

Rinsch was lying. He had no intention of using the March Payment to fund *White Horse*. Almost immediately after Streaming Company-1 wired the funds, Rinsch routed the March Payment through a series of different bank accounts until he eventually collected the money in a personal brokerage account. Rinsch then spent millions of that money gambling on speculative securities investments, including options contracts. Within a matter of weeks, he had lost more than half of Streaming Company-1's money.

But Rinsch didn't stop there. Rather than come clean about his scheme, Rinsch continued to lie. He spent the next few months sending executives at Streaming Company-1 various rosy updates about *White Horse*'s status, including claiming (falsely) that everything was "awesome and moving forward really well." His goal was clear: to reassure Streaming Company-1 and conceal his fraud.

While Rinsch continued to maintain this ruse, he switched investment tactics. In early 2021, he took what remained of his fraud proceeds and invested the money in cryptocurrencies. Unlike his previous approach, this one proved profitable. But even so, Rinsch still refused to use those earnings to fund *White Horse* or return the money he had stolen from Streaming Company-1. Instead, he went on a spending spree. Between in or about June 2021 and in or about November

2022, Rinsch spent roughly $10 million on personal expenses and luxury items, including millions of dollars on high-end cars and furniture, luxury housing, and professional fees.

Rinsch never completed *White Horse*, and he never returned the March Payment to Streaming Company-1. Rinsch did, however, initiate an arbitration against Streaming Company-1 in or about 2022, seeking to secure even more money (the "Arbitration"). Streaming Company-1 counterclaimed against Rinsch, seeking, among other relief, the return of the March Payment. Following a hearing, the arbitrator rejected Rinsch's claims and ruled in favor of Streaming Company-1.

In or about March 2025, a grand jury in this District indicted Rinsch for his scheme to defraud Streaming Company-1 and his laundering of the fraud proceeds. Specifically, the Indictment charges Rinsch with one count of wire fraud tied to the various false and misleading representations he made to Streaming Company-1 in order to obtain and retain the March Payment, one count of money laundering related to the steps Rinsch took to move and conceal his fraud proceeds, and five counts of engaging in monetary transactions with those proceeds.

## **ARGUMENT**

### I. Statements by Rinsch and his Agents, as Well as Contemporaneous Meeting Notes Prepared by a Financial Advisor, are Admissible for their Truth.

At trial, the Government will seek to introduce for their truth out-of-court statements made by Rinsch and his agents or employees. Likewise, the Government will seek to introduce notes that a financial advisor prepared following calls with Rinsch. Such statements do not constitute hearsay and may be admitted for their truth.

#### A. Applicable Law

##### 1. The Rule Against Hearsay

Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Hearsay is admissible only if it falls within an

enumerated exception. FED. R. EVID. 802. However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." FED. R. EVID. 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay. *Id.*; *see also United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990).

### 2.   Rule 801(d)(2)

Rule 801(d)(2) excludes from the definition of hearsay statements that are admitted against and attributable to an opposing party. There are several ways a statement may be attributed to a party. For instance, the party could have made the statement himself or manifested that he adopted the statement or believed it to be true. *See* FED. R. EVID. 801(d)(2)(A)&(B). Or it could be a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."[1] FED. R. EVID. 801(d)(2)(D). To admit a statement under this latter exception, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). "[A]dmissibility under this rule should be granted freely"; there is a "liberal" standard for admissibility given that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.

### 3.   Rule 803(6)

"Rule 803(6) renders admissible for its truth a record made at or near the time by a person

---

[1] Even if an agency or employee relationship does not exist between the party opponent and the declarant, the statement is nevertheless excluded from the rule against hearsay if the party opponent "authorized [the declarant] to make a statement on the subject." FED. R. EVID. 801(d)(2)(C).

with knowledge if the record was kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum." *United States v. Stein*, S1 05 Cr. 888 (LAK), 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007); *see also* FED. R. EVID. 803(6). The Second Circuit has adopted "a generous view" of the business records exception, *United States v. Strother,* 49 F.3d 869, 874 (2d Cir. 1995), emphasizing that "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all," *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). Notes documenting phone conversations can constitute business records. *Id.* at 575.

**B.    Discussion**

1.    <u>Rinsch's Own Statements</u>

The Government expects to introduce statements that Rinsch made about various relevant topics, including the nature of the purchases he made with the March Payment, his financial status in 2020 when he received that money, and his views on various investments he intended to make with Streaming Company-1's funds.[2] This includes not only statements that Rinsch made to his victim, Streaming Company-1, but also to his various advisors, accountants, and assistants. Such statements, if introduced against Rinsch, are not hearsay. FED. R. EVID. 801(d)(2)(A); *United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002). And the statements by other parties to those conversations are admissible to supply context for Rinsch's statements. *See United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006).

---

[2] These statements will come in various forms, including contemporaneous emails and text messages, witness testimony about things Rinsch told testifying witnesses, and Rinsch's own testimony during the Arbitration.

2.    Statements of Rinsch's Agents or Employees

The evidence at trial will show that Rinsch was the sole owner of his production company ("Production Company-1"). Evidence at trial will also demonstrate that Rinsch, in his personal capacity or in his capacity as the manager of Production Company-1, hired numerous individuals to assist with issues related to *White Horse* and Rinsch's finances. The Government expects to introduce statements from certain of those individuals concerning matters falling within the scope of their duties for Rinsch or his company. *See United States v. Riox*, 97 F.3d 648, 660 (2d Cir. 1996) (applying Rule 801(d)(2)(D) where the declarant was a subordinate of the defendant as the declarant was personally hired by the defendant, served at his pleasure, and received instructions from the defendant); *In re Reserve Fund Sec. Litig.*, 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7–8 (S.D.N.Y. Oct. 3, 2012) (applying Rule 801(d)(2)(D) to agents and employees of an entity controlled by the party opponent).

*First*, the Government expects to introduce various factual assertions made by Rinsch's counsel on his behalf, in writing, during the Arbitration.[3] Those include (i) certain portions of a joint stipulation of undisputed facts filed by the parties to the Arbitration, *see* Ex. A (GX 1003); and (ii) certain of Rinsch's responses to Streaming Company-1's discovery demands, *see* Ex. B (GX 1013), Ex. C (GX 1014).[4] Beyond simply being prepared by Rinsch's attorneys, the

---

[3] *See United States v. Amato*, 356 F.3d 216, 220 (2d Cir. 2004) (affirming admission of a letter from defendant's prior counsel); *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) ("The general admissibility of an attorney's statements . . . [is] well established."); *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir. 1981) (similar). The Second Circuit has developed a five-part test concerning the admission of *jury argument* by a criminal defendant's counsel in a *prior criminal trial*. *McKeon*, 738 F.2d 26; *United States v. Arrington*, 867 F.2d 122 (2d Cir. 1989) (limiting the test to prior counsel's jury argument). That test has no relevance here.

[4] On November 3, 2025, the Government provided to the defense the excerpted portions of Arbitration filings and transcripts that it expects to introduce during trial. Moreover, the parties are engaged in ongoing discussions about the scope of information related to the Arbitration each party

Government also expects to introduce Rinsch's testimony from the arbitration during which he admitted that he reviewed those sorts of filings, further indicating that they can be attributed to Rinsch. *See, e.g.*, Ex. D at 1460:8–14 (GX 1009D) (describing GX 1014, which was admitted during the arbitration as Exhibit 2113). The Government also expects to introduce various emails sent by Rinsch's counsel, acting on Rinsch's behalf, during his negotiations with Streaming Company-1 purportedly to secure additional funding for *White Horse* in late 2019 and early 2020.[5]

*Second*, Rinsch had various assistants during the relevant period. Evidence at trial will show that these assistants were tasked with helping Rinsch on things related to *White Horse*, including setting up meetings, delivering messages from Rinsch to others, and answering various questions on Rinsch's behalf about *White Horse*. One of these individuals also assisted Rinsch with budgeting- and accounting-related work, procuring items Rinsch wanted to purchase between 2020 and early 2022, and answering questions about *White Horse*'s status posed to Rinsch by his accountants. Once the appropriate foundation about the relationship between Rinsch and these individuals and the scope of their work is laid, their statements within the scope of that work are not hearsay if offered against Rinsch. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Cent. Of Contemp. Dance, Inc.*, 380 F.3d 624, 644 (2d Cir. 2004) (affirming admission of records prepared by an opposing party's assistant in the course of that assistant's employment); *Attis v. Solow Realty Devel. Co.*, 522 F. Supp. 2d 623, 629 n.3 (S.D.N.Y. 2007) (Rakoff, *J.*) (recognizing the admissibility of statements made by an opposing party's executive assistant, including

---

believes is appropriate to be presented to the jury (for instance, whether the jury may be advised of the nature of the claims or the outcome of the arbitration).

[5] Many of these statements are admissible regardless of the applicability of Rule 801(d)(2) because the statements will not be admitted for their truth, but for the fact that they were said and the corresponding effect on the listener—for instance, counsel's written agreement on behalf of Rinsch to a particular proposal.

those for which the assistant was simply acting as a "messenger").

*Third*, Rinsch retained various accountants between 2018 and 2023, to assist with accounting projects for himself and Production Company-1, as well as to prepare his tax filings. The Government expects to introduce statements made by those accountants during the course of their work, materials they prepared for Rinsch, and Rinsch's tax filings themselves. All such statements constitute statements of Rinsch's agents. *See, e.g.*, *United States v. Kelley*, 305 F. App'x 705, 708 (2d Cir. 2009) (a tax preparer's statements would "fall within Rule 801(d)(2)(D) [as a] statement of a party's agent" when introduced against the taxpayer); *see also United States v. Neumann*, No. 21 Cr. 439 (NSR), 2023 WL 8700974, at *5 (S.D.N.Y. Dec. 14, 2023) (statements made by agents retained to prepare the defendant's tax return, in the course of that work, are not hearsay).

### 3.    Notes of Calls with Financial Advisor-1

The Government's evidence at trial will show that, within days of receiving the March Payment from Netflix, Rinsch reached out to his financial advisor ("Financial Advisor-1")—an employee of a large, national financial advisory firm ("Financial Advisory Firm-1")—about investing this money in highly risky securities, including options to purchase the stock of Gilead, which, at the time, had a pharmaceutical treatment that showed promise in treating COVID-19. Through Financial Advisor-1, Rinsch invested large sums of money, including from the March Payment, in Gilead securities.  By late March 2020, however, Financial Advisory Firm-1 had grown so concerned about Rinsch's risky investments that it placed restrictions on his ability to make further bets.  Financial Advisor-1 took contemporaneous notes (the "Rinsch Client Dashboard Notes") of his calls with Rinsch regarding these risky investments on Financial Advisory Firm-1's client dashboard (the "Client Dashboard").  *See* Ex. E (GX 3049), Ex. F (GX 3050), Ex. G (GX 3051), and Ex. H (GX 3052).

Financial Advisor-1 is expected to testify as follows with respect to the Rinsch Client Dashboard Notes: (1) Financial Advisor-1 spoke on the phone with Rinsch in March 2020, and took the Rinsch Client Dashboard Notes at or near the time of his calls with Rinsch, (2) the Rinsch Client Dashboard Notes were kept in the course of Financial Advisor-1's regularly conducted business, and it was the regular practice of Financial Advisor-1 to take such notes to, among other things, memorialize his advice to clients and, in particular, to document the requests of clients with respect to large transactions should those requests later be questioned.

The Government seeks to offer the Rinsch Client Dashboard Notes as business records to reflect certain statements made by and to Rinsch during his calls with Financial Advisor-1. Financial Advisor-1's testimony is sufficient to lay the foundation that the Rinsch Client Dashboard Notes are business records, because Financial Advisor-1 will testify that: (1) Financial Advisor-1 is a person with knowledge of the relevant records (he is the person that authored the Rinsch Client Dashboard Notes); (2) the Rinsch Client Dashboard Notes were made at or near the time of Financial Advisor-1's phone calls with Rinsch; (3) the Rinsch Client Dashboard Notes were kept in the course of a regularly conducted business activity, namely, potential transactions pursued by Rinsch; and (4) taking notes like the Rinsch Client Dashboard Notes was a regular practice of Financial Advisor-1.  *See* FED. R. EVID. 803(6); *Kaiser*, 609 F.3d at 575 (holding that a witness's handwritten notes of telephone conversations were business records because they were "maintained in a consistent way and [were] focused on a certain range of issues that were relevant to [the witness's] business[,]" even though the note-taker indicated that he wrote down only "highlights" and matters he thought "important"); *United States v. Figueroa*, 23 Cr. 161 (MAD), 2023 WL 8373566, at *2–3 (S.D.N.Y. Dec. 4, 2023) (admitting as business records emails that contained notes of phone calls sent from a defendant's assistant to the defendant to provide updates to the

defendant); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775, at *6 (S.D.N.Y. Mar. 26, 2003) (finding a notebook "represent[ing] a record of various events that [an individual] observed and contemporaneously recorded . . . as part of her duties as a compliance officer" was admissible as a business record despite being "characterized as a personal diary"). Furthermore, the statements contained in the Rinsch Client Dashboard Notes are further admissible under Rule 801(d)(2)(D) as a statement of a party opponent.

## II.    Certain Evidence is Admissible as Direct Evidence or Under Rule 404(b)

At trial, the Government expects to introduce evidence related to Rinsch's tax filings in 2020 and the surrounding years, Rinsch's spending following November 2020, and statements Rinsch made in his divorce proceedings about his financial status and the ownership of certain luxury goods that he purchased. These items are admissible both as direct evidence and, independently, under Rule 404(b).

### A.    Applicable Law

#### 1.    Direct Evidence

Direct evidence is "not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*; *accord United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). Actions and statements are admissible as direct evidence of the crimes charged, and are "not considered other crimes evidence under" Rule 404(b), if (a) they "arose out of the same transaction or series of transactions as the charged offense," (b) they are "inextricably intertwined with the evidence regarding the charged offense," or (c) they are "necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007). Evidence of

uncharged acts is properly admitted to explain motive and prove intent for a charged crime. *Coonan*, 938 F.2d at 1561. In particular, "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Id.* (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)).

### 2.    Rule 404(b)

Evidence of a defendant's prior crimes, wrongs, or acts are admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). The Second Circuit follows an "inclusionary approach" under which "prior act evidence is admissible for any purpose other than to show a defendant's criminal propensity." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Such evidence is admissible if (1) advanced for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) admitted subject to a limiting instruction, if such an instruction is requested. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990).

### 3.    Rule 403

Whether evidence is admitted as direct evidence or under Rule 404(b), the probative value of such evidence must not be "substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. The touchstone of this analysis is whether the proffered evidence of uncharged acts "involve[s] conduct . . . more sensational or disturbing than the crimes with which [the defendant is] charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove

11

the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). To the extent that there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is on trial only for the crimes charged. *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice); *see generally United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) (recognizing the "strong presumption that juries follow limiting instructions").

### B.    Discussion

#### 1.    Tax Filings

The Government expects to introduce annual tax filings for Rinsch and Production Company-1 for tax years 2018 through 2022. Those filings are admissible as both direct evidence of Rinsch's fraudulent scheme and under Rule 404(b) as evidence of Rinsch's motive, intent, and lack of mistake.

To start, Rinsch's filings are direct evidence of his fraudulent scheme in several ways. The 2020 tax year filing for Production Company-1 shows that Rinsch distributed the March Payment to himself, meaning he took the money out of Production Company-1 for personal use. That directly supports the conclusion that Rinsch intended to (and did) use this money for his own investments and expenses, not, as he'd promised, to fund further production of *White Horse*. In addition, Production Company-1's tax filings for all five years also identify Rinsch as the sole owner of the company, which tends to prove that he is responsible for the decisions about what to do with money in that company's financial accounts.

Even if these filings were not direct evidence of Rinsch's crimes, they would nevertheless be independently admissible under Rule 404(b). *First*, Rinsch failed to report the income that

Production Company-1 earned through the March Payment on his 2020 individual tax return (he did, however, report the losses from the investments he made with the money in order to reduce his tax burden that year).[6] Rinsch also failed to report and pay taxes on the millions of dollars in gains he earned using his fraud proceeds to invest in cryptocurrencies in 2021. The fact that Rinsch "did not report or pay taxes" on his fraud proceeds in 2020 or 2021 supplies evidence of Rinsch's "intent and absence of mistake." *United States v. Bergstein*, 788 F. App'x 742, 745 (2d Cir. 2019); *United States v. Adelglass*, No. 23-6248, 2024 WL 5087519, at *2 (2d Cir. Dec. 12, 2024) ("We regularly uphold admission of financial and tax-related evidence when probative of motive, intent, or knowledge."); *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the] defense that the contested funds were legitimate compensation for work [the defendant] performed."). The Government also expects to argue that Rinsch committed the charged fraudulent scheme, in part, because he was desperate for money due to his financial condition, his obligations to Streaming Company-1, and his impending divorce. His decision to conceal this money to avoid paying taxes on it further demonstrates his level of financial desperation and helps to explain the context of and motive for his scheme.

*Second*, other information in Rinsch's tax filings for 2018 through 2022 supply additional evidence of Rinsch's financial motive. Specifically, both his individual and corporate filings show that outside of 2020, neither Rinsch nor Production Company-1 reported a material positive total income figure during this five-year period. That evidence, combined with other evidence of Rinsch's financial condition during this time, will show that Rinsch was in difficult financial straits by 2020, particularly given that he owed Streaming Company-1 a finished television show that

---

[6] Production Company-1 is an S Corporation, meaning that it is a pass-through entity and taxes on its earnings are paid by Rinsch as an individual.

was nowhere near complete. That context will help the jury understand why Rinsch chose to gamble Streaming Company-1's money in the stock market. *See United States v. Mostafa*, 16 F. Supp. 3d 236, 256 (S.D.N.Y. 2014) (admitting evidence concerning "the defendant's motive"). Relatedly, Rinsch's tax filings in the years that follow the March Payment will help to demonstrate that the money Rinsch was spending on various luxury items and professionals through at least November 2022 could not have come from any sources other than his fraud proceeds, as Rinsch had no other significant revenue streams. This last issue is probative not only of the wire fraud count in the Indictment, but also of the various money laundering counts, since it will help to prove that the money Rinsch was spending in 2020 and later came from and was attributable to his fraud.

### 2.    Spending of Fraud Proceeds After 2020

The Government expects to introduce evidence tracing Rinsch's fraud proceeds to a variety of different spending. While some of that spending occurred immediately after Rinsch fraudulently obtained (and retained) the March Payment—such as failed investments on various options contracts—he also used that money in various other ways over the years. Specifically, in early 2021, Rinsch invested fraud proceeds in cryptocurrencies. After making a profit from those investments, he used the funds to buy various luxury goods and vehicles, pay his rent at various high-end hotels and rentals, and even, in 2022, to pay for lawyers to sue Streaming Company-1 in an attempt to get more money. As charged, the wire fraud scheme runs until at least in or about November 2020. Rinsch's spending of his fraud proceeds even after that date is admissible as direct evidence of Rinsch's fraud and in the alternative, under Rule 404(b).[7]

---

[7] One expense post-dating November 2020—roughly $150,000 sent to a Manhattan-based furniture store in late 2021—is the subject of a separate count in the indictment. *See* Ind. ¶¶ 27–28.

There are numerous ways in which this spending is direct evidence of Rinsch's fraud—indeed, the Indictment alleges that this spending was tied to the charged scheme, *see* Ind. ¶ 14. To start, evidence of how Rinsch ultimately spent his fraud proceeds is "necessary to complete the story of the crime on trial.'" *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012). The fact that Rinsch used the funds for various things other than *White Horse* is direct proof that he defrauded Streaming Company-1 in 2020, after having convinced them to pay him the $11 million based on a promise to use the money for the production.[8] *See United States v. Jabar*, 19 F.4th 66, 79–82 (2d Cir. 2021) (evidence concerning how defendants misappropriated contract funds for personal use was directly relevant to establishing the defendants' fraudulent intent). Evidence of how Rinsch used his fraud proceeds also helps to refute the argument he made in the Arbitration that the luxury goods he purchased were actually intended for the production. For example, Rinsch admitted during the hearing that he sold the cars that he supposedly purchased as production assets and then used those funds to sue Streaming Company-1. *See, e.g.*, Ex. I at 1492:17–19 (GX 1009E) (Q: "So you sold the cars, and the funds are being used in this lawsuit against [Streaming Company-1]?" A: "They are, yes.").

Beyond that, the Government expects to introduce evidence to prove Rinsch made certain of these purchases, in part, to cover up his fraud. Specifically, testimony and documents will show that Rinsch knew he needed to hide his misappropriation of the March Payment and make it look to Streaming Company-1 as though he'd spent the funds as promised. And to do that, he bought

---

[8] Even if Rinsch's purchases in 2021 or later were connected to *White Horse*, he would nevertheless still be guilty of wire fraud given his earlier misuse of the funds to gamble on options contracts in 2020. *See Kousisis v. United States*, 145 S. Ct. 1382, 1391 (2025) (explaining that there is no "economic-loss requirement" where a defendant fraudulently induces a victim to enter into a transaction); *United States v. Bankman-Fried*, 680 F. Supp. 3d 289, 307–08 (S.D.N.Y. 2023) ("[I]t is immaterial as a matter of law whether the defendant intended to repay the misappropriated funds"); *see also United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (similar).

numerous items that he thought he could pass off as being production related—such as luxury cars, bedding, watches, and furniture—even though they bore no real connection to the show. Accordingly, Rinsch's spending following 2020 is direct evidence of his guilty conscience and his attempts to conceal his crime. *See United States v. Kelly*, 551 F.3d 171, 176 (2d Cir. 2009) ("A scheme to defraud may well include later efforts to avoid detection of the fraud."); *Roldan-Zapata*, 916 F.2d at 803–04 (explaining that "an apparent attempt to suppress evidence of the crime is plainly relevant to show [the defendant's] consciousness of guilt"); *United States v. Amanat*, No. 15 Cr. 536 (PGG), 2021 WL 3862898, at *17 (S.D.N.Y. Aug. 30, 2021) (recognizing that evidence of the defendant's attempts to cover up his conduct, along with other evidence, tended to show that he "did not act in good faith"); *United States v. Raines*, No. 22 Cr. 18 (NSR), 2023 WL 6211980, at *4 (S.D.N.Y. Sept. 25, 2023) (admitting evidence that was necessary context to prove the defendant worked to "cover up the [fraudulent] [s]cheme"); *cf. United States v. Kaplan*, No. 23 Cr. 293 (JMA), 2025 WL 2200539, at *11–12 (E.D.N.Y. Aug. 1, 2025) (concluding that a theft of customer funds and then the "attempt[] to cover up th[at] fraud" is "one story").

In the alternative, this post-November 2020 spending would also be admissible under Rule 404(b). Rinsch's spending of funds traceable to the March Payment on luxuries and professional services unrelated to creating a television show supplies evidence of his financial motive for committing the crime, and his intent and lack of good faith or accident. *See Adelglass*, 2024 WL 5087519, at *2 (Rule 404(b) permitted Government to introduce evidence of the defendant's "lavish spending" to prove "his motive"); *United States v. Franzone*, No. 21 Cr. 446 (VSB), 2025 WL 1094496, at * 9 (S.D.N.Y. Apr. 11, 2025) (concluding that spending on luxury cars, among other things, following the subject fraud offense, was admissible to prove, among other things, "motive, intent, absence of mistake, or lack of accident").

3.    Statements in the Divorce Proceeding

Rinsch declared under penalty of perjury in an April 2022 filing in his divorce proceeding that various items like cars and jewelry did not belong to him, but instead belonged to the *White Horse* production and, thus, Streaming Company-1. *See* Ex. J at -796–98, -800 (GX 7003). Those statements are direct evidence of Rinsch's fraud, as they tend to prove that the cars, jewelry, and other items Rinsch bought after 2021 were secured using Streaming Company-1's money. And, as the Government expects to introduce evidence showing that those purchases bore no real connection to the *White Horse* production (and that some of these items were even sold by Rinsch in order to pay for lawyers to sue Streaming Company-1), Rinsch's statements in his divorce filing demonstrate that he knowingly stole and misused Streaming Company-1's funds to make those purchases.

Even setting that direct admission aside, the divorce filing helps to establish that Rinsch's spending on various investments in 2020 and early 2021 must necessarily have been funded using Streaming Company-1's money. Specifically, in this filing, Rinsch made representations about his total net worth, which was nowhere near substantial enough to cover or explain those investments other than the March Payment. *See* Ex. J at -796–799. Moreover, the filing purports to identify each of Rinsch's personal and corporate financial accounts. That information, combined with records for those accounts, can be used to help prove what assets Rinsch had at his disposal at specific times, such as in March 2020, when he began spending millions in the market.

Rinsch's statements are also admissible as either direct evidence or Rule 404(b) material as they tend to prove his intent, lack of good faith, and financial motive. While Rinsch referred to these items as production-related property in his divorce filing, the Government expects to introduce other statements Rinsch made in which he referred to certain of these items as his personal property. This conflict between what Rinsch said about the assets in private, on the one hand, and

17

what Rinsch said about the property in a court filing, on the other hand, helps to establish Rinsch's fraudulent intent and lack of mistake. Indeed, the fact that Rinsch lied about the nature of the property in his divorce filing is probative of the fact that he was aware that he was misusing Streaming Company-1's money and wanted to hide that fact.

In addition, the Government expects to argue that Rinsch's statements in this divorce filing speak directly to his financial motive. As noted above, evidence at trial is expected to prove that Rinsch spent money on various items like luxury goods in an effort to create a paper trail he could use to convince Streaming Company-1 he'd used the March Payment as required. But the trial evidence is expected to show that there was another reason behind Rinsch's purchases: he wanted to avoid sharing his fraud proceeds with his wife in their divorce. By converting the $11 million paid by Streaming Company-1 into luxury vehicles and goods, and then claiming that those items were related to *White Horse*, Rinsch sought to avoid having them treated as part of the marital estate. Rinsch could then retain the assets and sell them later to turn them back into cash—something Rinsch admitted doing during the Arbitration. Similarly, Rinsch failed to disclose the value of his cryptocurrency account in his divorce filing, *see* Ex. J at -793, despite that account containing large quantities of cryptocurrencies, which Rinsch purchased with Streaming Company-1's money. Because the divorce filing helps to explain this aspect of Rinsch's motivation and plan, it is relevant to proving Rinsch's intent, financial motive, and lack of good faith.

**III.** ████████████████████████████████████████████
████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



**IV.    The Court Should Exclude Claims that the Presence of Attorneys and/or Accountants Is Relevant to Rinsch's Intent Absent a Formal Advice of Counsel Defense**

Rinsch also should be precluded from suggesting that the involvement of attorneys or accountants in certain decision-making demonstrates that he lacked criminal intent. The advice-of-counsel defense is a specific form of the defense of good faith, and to establish a colorable advice-of-counsel defense, the defendant must be able to identify evidence that, before acting, he in good faith sought the advice of counsel, conveyed all material facts accurately to the attorney, and acted strictly in accordance with the attorney's advice. *See United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017); *cf. United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir.1997) (affirming denial of advice-of-accountant jury charge where defendant failed to demonstrate the defendant followed an accountant's advice).  Where such a showing has not been made, a defendant may not introduce evidence of attorneys' other involvement in the events at issue—for example, "that lawyers attended meetings or set up meetings"—to "suggest that counsel blessed the relevant [materials or actions]." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013). Such evidence "would be confusing and unduly prejudicial" because a "jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction."  *Id.* "Such a misunderstanding would unfairly prejudice the government because it would 'give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.'" *United States v. Bankman-Fried*, No. S5 22-CR-0673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024) (quoting *Tourre*, 950 F. Supp. 2d at 684).

Accordingly, even those courts that have permitted such evidence have required detailed pretrial disclosures and, consistent with Rules 401 and 403, carefully policed references to counsel

or other professionals in testimony and argument to ensure that the defendant does not unfairly attempt to mount a "disguised reliance argument." *SEC v. Stoker*, No. 11 Civ. 7388 (JSR) (S.D.N.Y. July 23, 2012), Trial Tr. at 973; *see also Bankman-Fried*, 2024 WL 477043, at *2 (permitting certain lines of evidence and argument and precluding others after hearing testimony outside the presence of the jury); *United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. 2014), Trial Tr., Dkt. No. 63 at 83-85 (limiting defendant's testimony regarding the presence of counsel to avoid the "misleading impression" that the defendant relied upon the advice of counsel).

During his deposition in the Arbitration, Rinsch attempted to justify his use of the proceeds of the March Payment by reference to an alleged "two-year rule" pursuant to which, he claimed, "if you don't spend the money by the end of the second year, you have to pay taxes on it." *See* USAO_RINSCH_00002307-09. Rinsch claimed that he learned this from "a lawyer" and "accountants." *Id.* He further submitted a declaration in which he claimed that his "primary concern" in spending the funds "was the legitimate utilization of funds before they were rendered as mere gains, and potentially taxed." USAO_RINSCH_00010403, at -08.

Rinsch's counsel has advised the Government that he does not plan on asserting a formal advice-of-counsel defense, and the Government further understands from counsel that Rinsch does not plan to contend that his use of fraud proceeds was justified by a "two-year rule" learned from his professional advisors. Nevertheless, the Court should make clear that Rinsch cannot raise the alleged involvement or presence of an attorney or accountant in this matter to excuse his conduct or establish that he acted in good faith. *See, e.g.*, *United States v. Mattera*, No. 24 Cr. 117 (LAP) (S.D.N.Y.), Dkt. 66, Oct. 7, 2025 at 3-6 (precluding attempt to introduce evidence establishing defendant acted in good faith because of his interactions with counsel). Additionally, the defendant should be precluded from referencing the involvement of an attorney or accountant in his

opening statement, *see Tourre*, 950 F. Supp. 2d at 685, and if he attempts to introduce evidence of the involvement of an attorney or accountant during trial, the Court should provide a cautioning instruction as has been done in other cases in this District. *See, e.g.*, *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y.), Dkt. 245, May 31, 2022 Tr. at 787 ("A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of a lawyer."); *United States v. Petit*, No. 19 Cr. 850 (JSR) (S.D.N.Y.), Oct. 26, 2020 Tr. at 2402 ("there is no defense in this case of so-called reliance on counsel.").

## V.    The Court Should Exclude Evidence and Claims that Streaming Company-1 was Negligent or Failed to Conduct Adequate Due Diligence

Rinsch should be precluded from arguing or adducing evidence that Streaming Company-1 was negligent, gullible, or insufficiently vigilant. "The Court of Appeals routinely has rejected a gullible victim defense for wire-fraud charges." *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (citing *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007), and *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017)). That is because "reliance is not an element of criminal fraud," and "the unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent." *Weaver*, 860 F.3d at 95-96; *United States v. Ahmed*, No. 14 Cr. 277 (DLI), 2016 WL 8732355, at *4 (E.D.N.Y. June 24, 2016) ("Defendant may not argue that he did not intend to defraud Medicare because Medicare paid his claims, negligently or otherwise."); *United States v. Lesniewski*, 11 Cr. 1091 (VM), 2013 WL 3776235, at *2 (S.D.N.Y. July 12, 2013) ("[A]ny evidence proffered by Defendants for the purpose of establishing that the [fraud victim] was negligent or careless would be irrelevant to the inquiry of whether [the defendants] possessed the requisite intent to commit the fraud at issue in this case"), *aff'd*, 614 F. App'x 542 (2d Cir. 2015); *United States v. Nekritin*, 10 Cr. 491 (KAM), 2011 WL 2462744, at *7

(E.D.N.Y. June 17, 2011) (precluding defense from "arguing or presenting evidence that Medicare and Medicaid's payment of their claims is a defense to health care fraud").

Accordingly, Rinsch may not argue that Streaming Company-1 was to blame for lack of diligence. In particular, Rinsch should be precluded from cross-examining Streaming Company-1 witnesses about the quality of their diligence before advancing the March Payment to Rinsch in March 2020. For example, Rinsch may not use cross-examination to argue that Streaming Company-1 should have taken more extensive efforts to determine whether Rinsch actually planned to take the actions he agreed to take if he got the $11 million.  In a criminal fraud prosecution, negligence of the victim does not vitiate the defendant's fraudulent intent.  *See United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting cases holding that "negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct"). Therefore, Rinsch should not be permitted to cross-examine Streaming Company-1 witnesses in a manner that implies that their due diligence was inadequate. *Thomas,* 377 F.3d at 243 (rejecting "the notion that 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim'").

Likewise, cross-examination regarding Streaming Company-1's risk tolerance or willingness to lose money is equally irrelevant for the jury to consider and should be precluded. For example, Rinsch may try to argue that Stream Company-1 was willing to throw money around— facing competition from other streamers, it was willing to make risky bets on projects even where the chances of completion were low. Rinsch may similarly attempt to cross-examine Streaming Company-1 employees on Streaming Company-1's history funding other projects. Such cross examination would be irrelevant and should be precluded. *See United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017) (jury not required to consider materiality from "from the subjective perspective of the victim" because, "for purposes of wire fraud, mail fraud, and bank fraud, . . . a matter

is material if '*a reasonable man* would attach importance to its existence or nonexistence in deter-

mining his choice of action in the transaction in question'" (cleaned up)).

## VI.     The Court Should Limit the Scope of Cross Examination of Individual-1 Regarding Her Pending Divorce Proceedings with the Defendant

The Court should limit cross examination related to allegations made by Rinsch against his

wife ("Individual-1"), who also served as a producer on *White Horse*, during their pending divorce

proceedings. ██████████████████████████████████████████████

████████████████████████████████████████ Rinsch's declaration in the divorce

proceedings, which includes the allegations, is attached hereto as Exhibit K. The Government does

not dispute the fact of the divorce and that the accusations made by Rinsch could be probative of

Individual-1's truthfulness. Nevertheless, the Government asks that the Court police cross exami-

nation on these topics to avoid digression into a sideshow and preclude the introduction of extrinsic

evidence related to the accusations.

The Government expects Individual-1's testimony will be focused on her observations as

a producer on *White Horse*, Rinsch's representations to Individual-1 regarding his ability to fund

*White Horse*, Rinsch's plans for and use of the March Payment, and a meeting in which Individual-

1 participated in June 2020 with Rinsch and Streaming Company-1 executives (and statements

made by Rinsch to Individual-1 regarding that meeting). ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ Reasonable limits on the scope and duration of cross-examination

on the allegations from the divorce proceeding should be imposed to avoid a mini-trial and a waste

of the jury's time.  *See* FED. R. EVID. 403.

Moreover, under Rule 608(b), Rinsch should be precluded from introducing "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness."  In other words, should Individual-1 deny the allegations in the divorce, Rinsch cannot, under Rule 608(b), introduce extrinsic evidence to impeach the defendant and otherwise prove up the allegations in the divorce, ███████████████████████████

███████████████████████████████████████████.  To allow such

evidence would risk turning the "trial into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case." *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009); *United States v. Jeffers*, 402 F. App'x 601, 603 (2d Cir. 2010) (upholding preclusion of cross-examination necessitating "mini-trial").

## CONCLUSION

The Court should grant the Government's motions *in limine* in their entirety.


Dated:        New York, New York
              November 12, 2025

                            Respectfully submitted,

                            JAY CLAYTON
                            United States Attorney
                            Southern District of New York


                        By: /s/_____
                            Timothy Capozzi
                            David Markewitz
                            Adam Sowlati
                            Assistant United States Attorneys
                            Southern District of New York

25

# Exhibit A

1  ARWEN R. JOHNSON (SBN 247583)
     *arwen.johnson@kslaw.com*
2  JEFFREY M. HAMMER (SBN 264232)
     *jhammer@kslaw.com*
3  JENNY PELAEZ (SBN 326765)
     *jpelaez@kslaw.com*
4  BRITTANY LITZINGER (SBN 330771)
     *blitzinger@kslaw.com*
5  **KING & SPALDING LLP**
   633 West Fifth Street, Suite 1600
6  Los Angeles, California 90071
   Telephone:    (213) 443-4355
7  Facsimile:     (213) 443-4310

8  *Attorneys for Respondents and*
   *Counterclaimants Ice Cream Fridge, LLC and*
9  *Netflix Entertainment, LLC*

10                          **ADR SERVICES, INCORPORATED**

11

12

13  CARL RINSCH, an individual;          ADR No.: 22-6311-RJM
    HOME VFX, a California corporation,   *Honorable Rita Miller (Ret.)*
14
              Claimants and Counterclaim   **JOINT STIPULATION OF**
15            Respondents,                 **UNDISPUTED FACTS**

16        v.

17  ICE CREAM FRIDGE, LLC, a Delaware     **Arbitration:   Nov. 6-17, 2023**
    limited liability company; NETFLIX
18  ENTERTAINMENT, LLC, a Delaware
    limited liability company, and DOES 1
19  through 10,

20            Respondents and Counterclaimants.

21

22

23

24

25

26

27

28

                                          **GOVERNMENT**
                                          **EXHIBIT**
                                          **1003**
                                          25 Cr. 085 (JSR)

                                     1
                    JOINT STIPULATION OF UNDISPUTED FACTS

Claimants Carl Rinsch and Home VFX (collectively, "Claimants") and Respondents Ice Cream Fridge, LLC and Netflix Entertainment, LLC (collectively, "Netflix"), through their undersigned counsel, stipulate to the following facts:

Netflix made the following payments to Home VFX ("HVFX") pursuant to the Term Sheet and an agreement reached by email on March 5, 2020:

1. $2,023,066.23 total paid between June 2018 and September 2018 to cover HVFX's cash flow needs;

2. $8,002,000.00 was paid by Netflix on or about December 1, 2018 and received by HVFX on or about December 5, 2018 as part of the "Initial Purchase Price" pursuant to the Term Sheet;

3. $5,000,000.00 was paid by Netflix on or about February 19, 2019 and received by HVFX on or about February 21, 2019 for the first installment of the "Supplemental Purchase Price" pursuant to the Term Sheet;

4. $6,000,00.00 on or about August 6, 2019 for the second installment of the "Supplemental Purchase Price" pursuant to the Term Sheet;

5. $3,976,933.77 was paid by Netflix on or about August 6, 2019 and received by HVFX on or about August 12, 2019;

6. $5,300,000.00 on or about November 1, 2019; and

7. $11,000,000.00 on or about March 6, 2020.

2

CONFIDENTIAL

NFLXSDNY00089765
USAO_RINSCH_00004427

1

**KING & SPALDING LLP**

2

3          By: */s/ Arwen R. Johnson*
                Arwen R. Johnson
4                Jeffrey M. Hammer
                Jenny Pelaez
5                Brittany L. Litzinger

6                Attorneys for Respondents and Counterclaimants
                Ice Cream Fridge, LLC and Netflix
7                Entertainment, LLC

8

9

10          **GLASER WEIL**

11

12          By: */s/ Robert E. Allen*
                Robert E. Allen
13                Joel Klevens
                James Sargent

14
                Attorneys for Claimants and Counterclaim
15                Respondents Carl Rinsch and Home VFX

16

17

18

19

20

21

22

23

24

25

26

27

28

3
JOINT STIPULATION OF UNDISPUTED FACTS

CONFIDENTIAL

NFLXSDNY00089766
USAO_RINSCH_00004428

1

## **PROOF OF SERVICE**

2

### *Rinsch, et al. v. Ice Cream Fridge, LLC, et al.*
**ADRS Case No. 22-6311-RJM**

3

4        At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

5

6        On November 3, 2023, I served true copies of the following document(s) described as **JOINT STIPULATION OF UNDISPUTED FACTS** on the interested parties in this action as follows:

7

8    Patricia L. Glaser                              *Attorneys for Claimants*
     Robert E. Allen

9    James Sargent
     Joel Klevens

10   **Glaser Weil**
     10250 Constellation Blvd., 19th Floor

11   Los Angeles, CA 90067

12   Email: pglaser@glaserweil.com
           rallen@glaserweil.com

13         jsargent@glaserweil.com
           jklevens@glaserweil.com

14         kgould@glaserweil.com
           msance@glaserweil.com

15         jrivera@glaserweil.com
           ycervantes@glaserweil.com

16         gedwards@glaserweil.com

17

18        **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the

19   document(s) to be sent from e-mail address dochoa@kslaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any

20   electronic message or other indication that the transmission was unsuccessful.

21        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23        Executed on November 3, 2023, at Los Angeles, California.

24

25                                        _Dianna Ochoa_____
                                          Dianna Ochoa

26

27

28

---

PROOF OF SERVICE

NFLXSDNY00089767
USAO_RINSCH_00004429

# Exhibit B

1 PATRICIA L. GLASER - State Bar No. 55668
  pglaser@glaserweil.com
2 ROBERT E. ALLEN - State Bar No. 166589
  rallen@glaserweil.com
3 JAMES SARGENT - State Bar No. 280968
  jsargent@glaserweil.com
4 GLASER WEIL FINK HOWARD
    JORDAN & SHAPIRO LLP
5 10250 Constellation Boulevard, 19th Floor
  Los Angeles, California 90067
6 Telephone: (310) 553-3000
  Facsimile:   (310) 556-2920
7
  Attorneys for Claimants/Counterclaim
8 Respondents,
  Carl Rinsch and Home VFX
9
10                    **ADR SERVICES, INCORPORATED**
11
12
13 CARL RINSCH, an individual; HOME VFX, a        **ADRS No. 22-6311-RJM**
   California corporation,
14
15           Claimants and Counterclaim            **CLAIMANTS'/COUNTERCLAIM**
             Respondents,                          **RESPONDENTS' RESPONSES TO FIRST**
16 v.                                              **SET OF REQUESTS FOR ADMISSION**
17 ICE CREAM FRIDGE, LLC, a Delaware limited
   liability company; NETFLIX
18 ENTERTAINMENT, LLC, a Delaware limited
   liability company; and DOES 1- through 10,
19
20           Respondents and
             Counterclaimants.
21
22
23        Claimants/Counterclaim Respondents Carl E. Rinsch ("Rinsch") and Home VFX ("HVFX"

24 and collectively, "Claimants"), by and through their attorneys of record, hereby set forth their

25 objections and responses to the First Set of Requests for Admission propounded by

26 Respondents/Counterclaimants Ice Cream Fridge, LLC ("Ice Cream Fridge"), Netflix Entertainment,

27 LLC ("Netflix Entertainment") and Does 1-10, inclusive (collectively, "Respondents" or "Netflix").

28

Glaser Weil

GOVERNMENT
EXHIBIT
**1013**
25 Cr. 085 (JSR)

**RX 2111-1**                    NFLXSDNY00107103

                                 USAO_RINSCH_00067073

1

**Glaser Weil**

25                  <u>**SPECIFIC RESPONSES AND OBJECTIONS**</u>

26    <u>**REQUEST FOR ADMISSION NO. 1**</u>

27    Admit that YOU do not have in your possession, custody, or control approximately 13 episodes of

28    CONQUEST ranging from approximately 4 to 14 minutes in length and totaling 110-120 minutes.

3

**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO**
**FIRST SET OF REQUESTS FOR ADMISSION**

**RX 2111-3**

NFLXSDNY00107105

USAO_RINSCH_00067075

**RESPONSE TO REQUEST FOR ADMISSION NO. 1**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the term "episodes" as it requires Claimants' speculation as to what constitutes an "episode."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

**REQUEST FOR ADMISSION NO. 2**

Admit that YOU have not finished editing all episodes of the FIRST SEASON of CONQUEST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the phrase "finished editing" as it requires Claimants' speculation as to what constitutes "finished editing."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

**REQUEST FOR ADMISSION NO. 3**

Admit that YOU have not delivered to RESPONDENTS all episodes of the FIRST SEASON of CONQUEST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the term "delivered" as it requires Claimants' speculation as to what constitutes "delivered."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

Glaser Weil

4

2296932

**RX 2111-4**

NFLXSDNY00107106

USAO_RINSCH_00067076

DATED:  June 16, 2023

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By: _____
   PATRICIA L. GLASER
   ROBERT E. ALLEN
   JAMES SARGENT

   Attorneys for Claimants/Counterclaim
   Respondents

**Glaser Weil**

11

**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO
FIRST SET OF REQUESTS FOR ADMISSION**

2296932

**RX 2111-11**

NFLXSDNY00107113

USAO_RINSCH_00067083

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF SAN LOS ANGELES**

3         I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action.  My business address is 10250 Constellation Boulevard, 19th
4     Floor, Los Angeles, California 90067.

5         On June 16, 2023, I served the following document(s) described as
**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO FIRST SET OF**
6     **REQUESTS FOR ADMISSION** as follows:

7     ARWEN R. JOHNSON                        *Attorney for Respondents and*
     arwen.johnson@kslaw.com             *Counterclaimants Ice Cream Fridge, LLC and*
8     JEFFREY M. HAMMER                   *Netflix Entertainment, LLC*
     jhammer@kslaw.com
9     JENNY PELAEZ
     jpelaez@kslaw.com
10    BRITTANY L. LITZINGER
     blitzinger@kslaw.com
11    KING & SPALDING LLP
     633 West Fifth Street, Suite 1600
12    Los Angeles, California 90071
     Telephone: (213) 443-4355
13    Facsimile: (213) 443-4310

14

15        **BY E-MAIL:** I caused such document(s) to be electronically delivered from the email
address learly@glaserweil.com to the email addressee(s) set forth herein.  I did not receive, within a
16    reasonable time after the transmission, any electronic message or other indication that the
transmission was unsuccessful.

17        I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.
18

19        Executed on June 16, 2023, at Los Angeles, California.

20

21                             *Lacey Early*
                              Lacey Early
22

23

24

25

26

27

28

_Glaser Weil_

---

PROOF OF SERVICE

**RX 2111-12**             NFLXSDNY00107114

USAO_RINSCH_00067084

# Exhibit C

GOVERNMENT
EXHIBIT
1014
25 Cr. 085 (JSR)

1   PATRICIA L. GLASER - State Bar No. 55668
    pglaser@glaserweil.com
2   ROBERT E. ALLEN - State Bar No. 166589
    rallen@glaserweil.com
3   JAMES SARGENT - State Bar No. 280968
    jsargent@glaserweil.com
4   GLASER WEIL FINK HOWARD
    JORDAN & SHAPIRO LLP
5   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
6   Telephone: (310) 553-3000
    Facsimile:  (310) 556-2920
7
    Attorneys for Claimants/Counterclaim
8   Respondents,
    Carl Rinsch and Home VFX
9

10              **ADR SERVICES, INCORPORATED**

11

12  CARL RINSCH, an individual; HOME VFX, a    | **ADRS No. 22-6311-RJM**
    California corporation,
13
            Claimants and Counterclaim
14          Respondents,                        | **CLAIMANTS'/COUNTERCLAIM**
                                                 **RESPONDENTS' SECOND**
15  v.                                          **SUPPLEMENTAL RESPONSES TO FIRST**
                                                 **SET OF INTERROGATORIES**
16  ICE CREAM FRIDGE, LLC, a Delaware limited
    liability company; NETFLIX
17  ENTERTAINMENT, LLC, a Delaware limited
    liability company; and DOES 1- through 10,
18
            Respondents and
19          Counterclaimants.

20

21

22  PROPOUNDING PARTIES:     Respondents/Counterclaimants ICE CREAM FRIDGE, LLC

23                           and NETFLIX ENTERTAINMENT, LLC

24  RESPONDING PARTIES:      Claimants/Counterclaim Respondents CARL E. RINSCH

25                           and HOME VFX

26  SET NO.:                 ONE

27

28

                                        1
    **CLAIMANTS/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO**
                        **FIRST SET OF INTERROGATORIES**

GlaserWeil

2285997

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Arbitrator's Case

2    Management Order No. 2, Claimants/Counterclaim Respondents Carl E. Rinsch ("Rinsch") and Home

3    VFX ("HVFX" and collectively, "Claimants"), by and through their attorneys of record, hereby set

4    forth their **second supplemental responses** to the First Set of Interrogatories propounded by

5    Respondents/ Counterclaimants Ice Cream Fridge, LLC ("Ice Cream Fridge"), Netflix Entertainment,

6    LLC ("Netflix Entertainment") (collectively, "Respondents" or "Netflix").



**Glaser Weil**

1

**CLAIMANTS/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO
FIRST SET OF INTERROGATORIES**

2285997

**RX 2113-2**

NFLXSDNY00107128

USAO_RINSCH_00067098



**SUPPLEMENTAL RESPONSES**

**INTERROGATORY NO. 6**

Describe in detail how YOU spent the $11 million you received on or around March 6, 2020, pursuant to the agreement attached as Exhibit B to RESPONDENTS' First Amended Counterclaims.

**RX 2113-4**         NFLXSDNY00107130

USAO_RINSCH_00067100

**RESPONSE TO INTERROGATORY NO. 6**

Claimants object to this interrogatory to the extent it is unduly broad, overly burdensome, not proportional to the needs of the case, not reasonably calculated to lead to the discovery of relevant, admissible evidence, and seeks information that is not relevant to any claim or defense in this case. Claimants further object to this interrogatory on the basis that it would necessitate the preparation or making of a compilation, abstract, audit, or summary of or from documents. Claimants further object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, the joint-interest or common-interest privilege, the work product doctrine, or any other privilege. Claimants further object to this interrogatory to the extent it would require the disclosure of information or documents that are confidential, proprietary, competitively sensitive, trade secret and/or constitute information protected by right to privacy (including the right to financial privacy) under the constitutions of the U.S. and/or California.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Subject to, and without waiving, these objections, and to the extent Claimants understand this interrogatory, Claimants respond as follows:

Claimants direct Respondents to the documents produced as HVFX_00048280 – HVFX_00048281; HVFX_00048283 as found in the password protected link transmitted under separate cover.

4

**CLAIMANTS/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES**

Glaser Weil

2285997

**RX 2113-5**

NFLXSDNY00107131

USAO_RINSCH_00067101

1 ███████████████████████████████████

2 ███████████████████████████

3

4     DATED:  June 28, 2023                    GLASER WEIL FINK HOWARD
                                                JORDAN & SHAPIRO LLP
5

6                                               *James Sargent*

7                                        By: _____
                                                PATRICIA L. GLASER
8                                               ROBERT E. ALLEN
                                                JAMES SARGENT
9                                               Attorneys for Claimants/Counterclaim
                                                Respondents, Carl Rinsch and Home VFX

10

11

**Glaser Weil**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                6
     **CLAIMANTS/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO
                      FIRST SET OF INTERROGATORIES**

2285997

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

On June 28, 2023, I served the foregoing document(s) described as:

| | |
|---|---|
| 1. | **CLAIMANTS'/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO FIRST SET OF INTERROGATORIES; and** |
| 2. | **CLAIMANTS'/COUNTERCLAIM RESPONDENTS' SECOND SUPPLEMENTAL RESPONSES TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS** |
| | |

on the interested parties to this action by delivering thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

**SEE ATTACHED LIST**

**BY E-MAIL**: I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☒  (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐  (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on June 28, 2023, at Los Angeles, California.

_____
GWENDOLYN EDWARDS

1
**PROOF OF SERVICE**

**RX 2113-8**    NFLXSDNY00107134

USAO_RINSCH_00067104

1

**SERVICE LIST**
*Rinsch, et al. v. Ice Cream Fridge, LLC, et al.*
ADRS Inquiry No. 31305

2

3

ARWEN R. JOHNSON

4

arwen.johnson@kslaw.com
JEFFREY M. HAMMER

5

jhammer@kslaw.com
JENNY PELAEZ

6

jpelaez@kslaw.com

7

BRITTANY L. LITZINGER
blitzinger@kslaw.com

8

KING & SPALDING LLP
633 West Fifth Street, Suite 1600

9

Los Angeles, California 90071
Telephone: (213) 443-4355

10

Facsimile: (213) 443-4310

11

***Attorney for Respondents and Counterclaimants Ice Cream Fridge, LLC and Netflix Entertainment, LLC***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Glaser Weil**

19
**PROOF OF SERVICE**

**RX 2113-9**

NFLXSDNY00107135

USAO_RINSCH_00067105

# Exhibit D



In the Matter Of:

CARL RINSCH, et al.

vs

ICE CREAM FRIDGE, LLC, et al.

TRANSCRIPT OF PROCEEDINGS Vol V

November 10, 2023

Case No:  22-6311-RJM

GOVERNMENT
EXHIBIT
1009D
25 Cr. 085 (JSR)

Case 1:25-cr-00085-JSR    Document 43    Filed 11/12/25    Page 53 of 94

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023

```
 1          ADR SERVICES, INCORPORATED
 2
 3
 4   CARL RINSCH, an individual;      )
     HOME VFX, a California           )
 5   corporation,                     )
                                      )
 6             Claimants,             )
                                      )
 7   vs.                              ) Case No. 22-6311-RJM
                                      )
 8   ICE CREAM FRIDGE, LLC, a         )
     Delaware limited liability       )
 9   company; NETFLIX                 )
     ENTERTAINMENT, LLC, a            )
10   Delaware limited liability       )
     company, and DOES 1 through      )
11   10,                             )
                                      )
12             Respondents.           )
     _____)
13
14
15
16                VOLUME V
17          ARBITRATION PROCEEDINGS
18         Friday, November 10, 2023
19
20
21
22
23   Stenographically Reported by:
24   Stephanie Leslie
     CSR No. 12893
25
```

```
 1   BEFORE ARBITRATOR RITA  SUNNY  MILLER (RET.)
 2
 3   APPEARANCES OF COUNSEL:
 4
 5     For the Claimants:
 6         GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP
               By:  Robert E. Allen
 7                  Joel Klevens
                    Attorneys at Law
 8              10250 Constellation Boulevard, 19th Floor
                Los Angeles, California  90067
 9              (310) 553-3000
10
11     For the Respondents:
12          KING & SPALDING
                By:  Arwen Johnson
13                   Jeffrey M. Hammer
                     Jenny Pelaez
14                   Brittany Litzinger
                     Attorneys at Law
15              633 West Fifth Street, Suite 1600
                Los Angeles, California  90071
16              (213) 443-4345
17
18
19   ALSO PRESENT:
20          CARL RINSCH
21          ALLISON GIBSON, PARALEGAL
22          BRODERICK SCOTT, TECHNICIAN
23          LINDA BURROW, ESQ.
24
25
                                            1250
```

```
 1          ADR SERVICES, INCORPORATED
 2
 3
 4   CARL RINSCH, an individual;      )
     HOME VFX, a California           )
 5   corporation,                     )
                                      )
 6             Claimants,             )
                                      )
 7   vs.                              ) Case No. 22-6311-RJM
                                      )
 8   ICE CREAM FRIDGE, LLC, a         )
     Delaware limited liability       )
 9   company; NETFLIX                 )
     ENTERTAINMENT, LLC, a            )
10   Delaware limited liability       )
     company, and DOES 1 through      )
11   10,                             )
                                      )
12             Respondents.           )
                                      )
13
14
15
16        Arbitration proceedings taken before Stephanie
17   Leslie, Certified Shorthand Reporter 12893, for the
18   State of California, commencing at 10:10 a.m., Friday,
19   November 10, 2023, at 1900 Avenue of the Starts, Suite
20   200, Los Angeles, California.
21
22
23
24
25
                                            1249
```


CONFIDENTIAL

NFLXSDNY00081696

USAO_RINSCH_00003045

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



14    MS. JOHNSON:  Can we put up 2113?
15

1459

www.regalcourtreporting.com
866-228-2685



CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1

8    (Whereupon, Exhibit 2113 was admitted into
9    evidence.)
10   BY MS. JOHNSON:
11   **Q    And Mr. Rinsch, did you review your**
12   **discovery responses before they were provided to**
13   **Netflix?**
14   A    I'm sure I did.
15        MS. JOHNSON:  And let's go down to page 4.
16   And the bottom part of the page -- if you could
17   blow it up, Mr. Scott.  Right there.  Exactly.
18   BY MS. JOHNSON:
19   **Q    And it says, "Describe in detail how you**
20   **spent the 11 million you received on or around**
21   **March 6, 2020, pursuant to the agreement attached**
22   **as Exhibit B to Respondents' First Amended**
23   **Counterclaims."**
24        **Do you see that?**
25   A    Yes, I do.

1460

1        MS. JOHNSON:  And go to the next page.
2    And go to the supplemental response.
3    BY MS. JOHNSON:
4    **Q    In this response, Claimants direct**
5    **Respondents to the documents -- to certain**
6    **documents that were produced; correct?**
7    A    Yes, I do.
8

1461

1
2
3
4
5
6
7
8
9
10       MS. JOHNSON:  Yes.  I'd like to move 2118
11   and 2119 into the record.
12        MR. ALLEN:  Now, because these are
13   natives, can you also let us know if -- I'm sure we
14   have them on a list -- just to make sure we know
15   what the Bates numbers are?
16        MR. HAMMER:  For 2119, the Bates is HVFX
17   48280.
18        MR. ALLEN:  And 2118?
19        MS. JOHNSON:  HVFX 48283.
20        MR. ALLEN:  Thank you.  I have no
21   objection.
22        ARBITRATOR MILLER:  Admitted.
23        (Whereupon, Exhibits 2118 and 2119 were
24        admitted into evidence.)
25   //

1463



CONFIDENTIAL

NFLXSDNY00081749
USAO_RINSCH_00008071

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023

1  BY MS. JOHNSON:
2  **Q   All right.  Mr. Rinsch, we're looking now**
3  **at 2119.**
4      **Do you see that?**
5  A   Yes.  I --
6  **Q   It's at the very top.**
7      MS. JOHNSON:  Oh.  Sorry.  I guess --
8  yeah.  It's at the very top.
9      THE WITNESS:  Yes.  Thank you.
10  BY MS. JOHNSON:
11  **Q   And is this ledgers you prepared?**
12  A   Most likely.  It looks that way.
13  **Q   And we're looking at the top sheet tab.**
14  A   Yes, ma'am.
15  **Q   And the top sheet has several columns, and**
16  **one of the columns is "October 31st, 2019, to**
17  **March 6, 2020."**
18      **Do you see that?**
19  A   Yes.  Five columns.
20  **Q   Yeah, it does have five columns.  You're**
21  **right.  We're looking at Column 2.**
22  A   Yes.
23  **Q   And on Row 8, there's a row that looks to**
24  **be labeled "Netflix Transfer."**
25      **Do you see that?**
1464

1  A   Correct.  Correct.  Correct.
2  **Q   And there's an entry for 5,300,000.**
3  **That's on Row 8, Column 2, under the "October 31st,**
4  **2019, and March 6, 2020" column.**
5      **Do you see that?**
6  A   Yes.  Yes.
7  **Q   And that's intended to reflect the**
8  **5,300,000 that you received --**
9  A   On October 31st, 2019, yes.
10  **Q   -- right?  Okay.**
11      **And then Column 3 says "March 6, 2020, to**
12  **the present."**
13      **Do you see that?**
14  A   Yes, I do.
15  **Q   And in Row 8, there's -- of Column 3,**
16  **there's a figure of "$11 million."**
17      **Do you see that?**
18  A   Yes, I do.
19  **Q   And that's reflecting the Netflix transfer**
20  **on March 6, 2020, of $11 million; correct?**
21  A   Yes, it does.
22  **Q   Further up on Row 4, there's a column that**
23  **seems to indicate different years; is that right?**
24  **Or actually not Row 4.  Column 1 indicates**
25  **different years; right?**
1465

1  A   Yes.  Yes.
2  **Q   Row 4 is 2020.**
3      **And then in Column 3 --**
4  A   Right.  Right.
5  **Q   -- there's a figure of "$1,720,125.10."**
6  A   That's correct.
7  **Q   And Column 3 is "March 6, 2020, to the**
8  **present."**
9      **Do you see that?**
10  A   Yes.
11  **Q   And that reflects spending by you in that**
12  **time period; correct?**
13  A   Yes.  That's correct.  By the company.
14  **Q   By the company?**
15  A   Yeah.
16  **Q   And then Row 3 in Column 1 has the year**
17  **"2021."**
18      **Do you see that?**
19  A   Yes, I do.
20  **Q   And Column 3, Row 3 indicates a figure of**
21  **"$11,404,352.35."**
22      **Do you see that?**
23  A   That's correct.  Yes, I do.
24  **Q   And that reflects spending from the**
25  **company -- or spending by the company, your**
1466

1  **company, in 2021 of $11,404,352.35; correct?**
2  A   That's correct.
3
4

13  **Q   And Mr. Rinsch, before we go on, this top**
14  **sheet reflects -- well, this document reflects how**
15  **you spent the $11 million that Netflix provided**
16  **you; right?**
17  A   This top sheet illustrates a couple of
18  things.  It illustrates money spent from
19  October 31st to March 5th, and -- there's two
20  things.
21      **Do you understand?**
22  **Q   Certainly.**
23  A   As well as the $11 million.
24  **Q   Okay.  Let's go to the tab that's "2020**
25  **MMB budget."**
1467



CONFIDENTIAL

NFLXSDNY00081750
USAO_RINSCH_00008072

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1   A   Okay.
2   [redacted]
3
4
5
6
7
8   Q   What does MMB mean?
9   A   I don't think so yet, actually, or at
10  least not when I've been in the room.
11      There's a program called Movie Magic
12  Budgeting and Scheduling.
13  [redacted]
14
15
16
17
18
19
20
21  Q   And this is -- I don't want to go through
22  every single thing here, but this 2020 MMB budget
23  tab is essentially a summary that breaks down
24  spending in various categories; right?
25  A   Yeah.  If you can scroll down -- I don't
                                              1468

1   know if this pertains to the 5.3 or if this
2   pertains to the 11.
3       If you can go all the way down, that would
4   be great.  Okay.
5       And this is 2020?
6   Q   This one's 2020.
7   A   And if you went to the top sheet just real
8   quick -- it doesn't have to be difficult -- got it.
9   Okay.  Got it.  Perfect.
10      So it's inclusive of both.  It's by the
11  year.
12  Q   Right.
13  A   Some of these are by the year.  Some of
14  these are by the project.
15  Q   Exactly.  I understand.
16  A   I do it that way because sometimes -- you
17  know, sometimes the accounting is accrual, and
18  sometimes it's annual accounting.
19  Q   Right.  So if you go back to the 2020 MMB
20  budget --
21      MS. JOHNSON:  Go to the top.
22  BY MS. JOHNSON:
23  Q   This page is essentially a summary page of
24  how funds were spent --
25  A   Per year.
                                              1469

1   Q   -- in 2020?
2   A   Correct.
3   Q   Okay.
4       MS. JOHNSON:  Let's take down 2119 --
5   Exhibit 2119, and put up Exhibit 2118.
6   BY MS. JOHNSON:
7   Q   And Exhibit 2118 has a top sheet as well.
8   A   Okay.  I see.
9       Can I ask what the difference is between
10  2118 and 2119?
11  Q   I think the top sheet is the same in both.
12  A   But the supporting --
13  Q   Correct.  The supporting.  This is the
14  2021 supporting figures.
15  A   Okay.
16  Q   And if you go to the 2021 MMB budget tab,
17  this is the summary of HVFX spending in 2021;
18  right?
19  A   It appears that way, yes.
20  [redacted]
21
22
23
24
25
                                              1470

1   [redacted]
2   [redacted]:
3   Q   There's a few categories I'd like to focus
4   on --
5   A   Sure.
6   Q   -- specifically today.
7       And why don't we start with "Set
8   Dressing/Properties."
9   A   Perfect.
10  Q   And it looks like, if this is correct, you
11  spent 658,000 -- what?
12  A   No.
13  Q   $6,584,955.54 in the "Set Dressing, slash,
14  Properties" category --
15  A   Correct.
16  Q   -- in 2021; right?
17  A   That's correct.  That's correct.
18  Q   So about -- approximately six-and-a-half
19  million dollars; right?
20  A   Correct.
21  Q   All right.  Let's go to the "Set
22  Dressing/Properties Breakdown."
23  [redacted]
24
25  [redacted]
                                              1471



REGAL
COURT REPORTING

CONFIDENTIAL

NFLXSDNY00081751
USAO_RINSCH_00008073

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



**Page 1472**

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12      Q    And there's an entry for Set Design,
13   slash, Set Decoration, slash, Furniture Hastens.
14         Do you see that?
15      A    Absolutely, I do.
16      Q    And there's four payments to Damon Capital
17   LLC?
18      A    That's correct.
19      Q    Totaling $637,768.80 for mattresses.
20         Do you see that?
21      A    That's correct.
22      Q    And these purchases were all made in
23   September of 2021; right?
24      A    That is correct.
25      Q    And if you go to the column that shows the
```

**Page 1474**

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10      Q    And these mattresses were purchased for
11   you personally; right?
12      A    No.  Absolutely not.
13      Q    What part of the "Conquest" production
14   were these for?
15      A    These were for the subsequent season.
16
17
18
19
20
21
22                                                 ,
23
24                                                 .
25   //
```

**Page 1473**

```
 1   checking account from which these purchases were
 2   made, these were made from your personal Bank of
 3   America checking account ending in 3966; is that
 4   right?
 5      A    I had opened up an account specifically
 6   for this, for the $11 million, just to keep it
 7   simple and clear so that every single dollar that
 8   was spent from the account, bar none, was for what
 9   we had discussed.  It's a specific account.
10         So I had a private account -- I have a
11   private account separate from this, and this was
12   set up specifically to function for these
13   purchases, and that was personal.
14      Q    And that's the checking account ending in
15   3966?
16      A    Yes, ma'am.
17
18                                               ?
19
20
21
22
23
24
25
```

**Page 1475**

```
 1   BY MS. JOHNSON:
 2      Q    Well, let me ask you this:  Do you
 3   generally recall what part of the --
 4      A    Movie?
 5      Q    -- "Conquest" movie these were for?
 6      A    Sure.  Sure.  Of course.
 7      Q    What were they for?
 8      A    Well, there's two beds, right,
 9   quote/unquote, "black bed" and a "white bed,"
10   because they're black and white.  And all the
11   sheets and all the dressings and everything is as
12   one might expect.
13         You know, it's two -- a brother and a
14   sister, and so one has their own design, and the
15   other has the other design.
16         Now, of course, the brother kills the
17   sister, and so, you know, he's the baddie, and
18   she's the goodie, as they say in England.
19         So the beds are the royal beds of the king
20   and queen, so to speak.
21      Q    And you spent, it appears to be,
22   $637,768,000 on mattresses; is that right?
23      A    On mattresses.  But on the whole bedding
24   and mattresses, it's more.
25
```


CONFIDENTIAL

NFLXSDNY00081752
USAO_RINSCH_00008074

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



17
18    **Q    And, Mr. Rinsch, you can agree that these**
19    **are extraordinarily expensive mattresses; right?**
20        A    Not only extraordinarily.  Almost Cat in
21    the Hat crazy expensive mattresses, yes.  But they
22    appreciate in value, strangely.
23

1478



CONFIDENTIAL

NFLXSDNY00081753
USAO_RINSCH_00008075

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1  BY MS. JOHNSON:
2     Q   And there's also an entry here for
3  "linens"?
4     A   Yes, ma'am.
5     Q   And it says "Linens Frette."
6        Is that a brand of linens?
7     A   Frette and Sferra are the two brands.
8     Q   And these are the brands for the beds that
9  you described?
10    A   That's correct.
11    Q   And you bought $47,935.85 worth of linens?
12    A   That's correct.
13

1480

12    Q   Well, it looks like you spent
13  approximately $6 million on furniture between
14  August and December 2021.
15       Does that sound right to you?
16    A   Yeah.  Set deck.  Yeah.
17

1483

www.regalcourtreporting.com
866-228-2685



CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1  approximately, in set design entries here, that was
2  all purchased with the $11 million that you
3  received from Netflix?
4    A  Yeah, for the supplemental production.
5    Q  Let's go to Tab 12, "Picture Vehicles."
6
7
8
9
10
11
12
13
14    Q  Mr. Rinsch --
15    A  Yes, ma'am.
16    Q  -- this reflects various vehicle purchases
17  in the fall and late 2021; correct?
18    A  Yes.  If you go down, there's actually --
19  so if you see the Manhattan -- just to expedite
20  things, the Manhattan motor cars is a null.  It's a
21  void.  I don't believe any car was actually
22  purchased there.
23      But if you go down, the ones that say
24  Rolls-Royce Rusnak, those were purchased.
25    Q  What do you mean "the Manhattan motor cars

1486

1  was a null"?  What do you mean by that?
2    A  Do you see how this and this match?
3    Q  I see.
4    A  All right.  I was negotiating with them,
5  and I said, "Look, we're not getting along.  I
6  don't like all these prices, so give me my money
7  back," and they did.
8      So those aren't -- that's just accounting.
9    Q  Okay.
10    A  No physical vehicle was purchased.
11    Q  Okay.  But it looks like there was a
12  Ferrari?
13    A  Absolutely.
14    Q  And if you go down --
15    A  Four Rolls-Royces.
16    Q  Four Rolls-Royces?
17    A  That's correct.
18    Q  All purchased in the late 2021 time frame?
19    A  Yes.
20    Q  And these purchases weren't necessary for
21  any part of "Conquest," were they?
22    A  Sorry.  Ask that question again, please.
23    Q  These purchases weren't necessary for --
24    A  Were not; is that what you said?
25    Q  Were not.

1487

24  BY MS. JOHNSON:
25    Q  And just to be clear, the $6 million,

1485



CONFIDENTIAL

NFLXSDNY00081755
USAO_RINSCH_00008077

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1   A   No. Of course they were. That would be
2  fraud. I would go to prison otherwise.
3

1   A   You know, the ones that you see there at
2  what's called the F.C. Kerbeck & Son, I never ended
3  up seeing those because this all took a turn that
4  leads us here. So I never received those or did
5  anything like that.
6      On the one that had the orange interior, I
7  did have that here. And, you know, you don't let
8  these things sit, but you have to remember, I don't
9  own a car, for instance. I drive Uber. I'm not,
10  you know -- let's -- yeah.
11      I don't have a private jet. I don't sleep
12  in a $600,000 bed. I don't, like, tear around in a
13  Ferrari. It's not who I am. I wear the same
14  clothes every single day.
15      So the point is that the Kerbeck & Sons, I
16  never drove.
17      The Rusnak one, I drove, but not every
18  day. It was during quarantine. But you have to do
19  it every once in a while.
20      Same with a Ferrari or else it causes
21  problems, so to speak.
22

1488

18   Q   The whole spreadsheet, Exhibit 2118, which
19  is --
20   A   I haven't gone through the whole thing
21  with you, but I imagine, yes.
22   Q   This spreadsheet reflects your spending in
23  2021; correct?
24   A   Correct. Great.
25

24   Q   Did you drive any of these cars
25  personally, Mr. Rinsch?

1489

1491



CONFIDENTIAL

NFLXSDNY00081756
USAO_RINSCH_00008078

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



```
10    Q    And where are the cars now, Mr. Rinsch?
11    A    They are sold.  I sold them.
12    Q    And where are the funds from the sale?
13    A    The funds from the sale operated overhead
14  and covered legal.
15    Q    When you say "legal," what legal?
16    A    Ta-da.  You know, we're sitting in it.
17    Q    So you sold the cars, and the funds are
18  being used in this lawsuit against Netflix?
19    A    They are, yes.
```



CONFIDENTIAL

NFLXSDNY00081757
USAO_RINSCH_00008079

# Exhibit E

## Notes - RINSCH  CARL ERIK (Household)

Johanning, Jennifer

| Start Date/Time | Updated | For | Last Updated By | Description |
|---|---|---|---|---|
| **3/11/20 12:38 PM** | **3/11/20 12:40 PM** | **CARL  RINSCH** | **SEE, RONALD G.** | **concentrated position** |

Carl called this morning and asked me to place an order to purchase 4700 shares of GILD.  I asked him if he was aware that this would be a concentrated position since he already owns 2000 shares.  He stated he understood the risks associated with the position and was very comfortable with it.

GOVERNMENT
EXHIBIT
3049
25 Cr. 85 (JSR)

WFCS-000032
Confidential Treatment Requested
USAO_RINSCH_00072389

# Exhibit F

# Notes - RINSCH  CARL ERIK (Household)

**Johanning, Jennifer**

| Start Date/Time | Updated | For | Last Updated By | Description |
|---|---|---|---|---|
| **3/13/20 1:19 PM** | **3/13/20 1:21 PM** | **CARL  RINSCH** | **SEE, RONALD G.** | **General** |

Carl called today and asked me to enter an order to purchase 4000 additional shares of GILD.  He stated he is aware of the risks associated with the large position.  He also stated he will being wiring in an additional $5,000,000 over the weekend.

**GOVERNMENT EXHIBIT 3050**

25 Cr. 85 (JSR)

For internal use only. Not for use with or for distribution to the public.

WFCS-000029
Confidential Treatment Requested

USAO_RINSCH_00071762

# Exhibit G

# Notes - RINSCH  CARL ERIK (Household)

Johanning, Jennifer

| Start Date/Time | Updated | For | Last Updated By | Description |
|---|---|---|---|---|
| **3/24/20 10:18 AM** | **3/24/20 10:22 AM** | **CARL  RINSCH** | **SEE, RONALD G.** | **General** |

Carl called this morning with several orders.
b 72000 CCL at mkt
b 6750 GILD at mkt
b 30,000 CCL at mkt
b 430 GILD Apr 75 Calls at 5.70

I discussed with Carl the risks associated with the large concentrated positions and he understands the risks.

I previously discussed this account with my branch manager Mark Webster and the parameters he set was no more the 25% of the value of the account in any one stock and no more than $250,000 in options.  No margin can be used for purchases cash trades only.



GOVERNMENT
EXHIBIT
3051
25 Cr. 85 (JSR)

WFCS-000030
Confidential Treatment Requested
USAO_RINSCH_00071763

# Exhibit H

## Notes - RINSCH  CARL ERIK (Household)

Johanning, Jennifer

| Start Date/Time | Updated | For | | Last Updated By | Description |
|---|---|---|---|---|---|
| **3/30/20 1:15 PM** | **3/30/20 1:20 PM** | **CARL  RINSCH** | | **SEE, RONALD G.** | **General** |

Carl called this morning and said he would be wiring $8.5 million dollars from his account into a Charles Schwab account.  When he purchased the GILD is was approximately 10% of the portfolio and the GILD options were less than 5% of the portfolio.  Carl said there were no hard feelings and is transferring the funds to Schwab where there will be no restrictions on his activity.   As in previous notes Carl is aware of the risks associated with large concentrated positions.

GOVERNMENT
EXHIBIT
**3052**
25 Cr. 85 (JSR)

For internal use only. Not for use with or for distribution to the public.

WFCS-000031
Confidential Treatment Requested

USAO_RINSCH_00071764

# Exhibit I



In the Matter Of:

CARL RINSCH, et al.

vs

ICE CREAM FRIDGE, LLC, et al.

TRANSCRIPT OF PROCEEDINGS Vol V

November 10, 2023

Case No:  22-6311-RJM

GOVERNMENT
EXHIBIT
1009E
25 Cr. 085 (JSR)

NFLXSDNY00081695
USAO_RINSCH_00003044

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023

```
 1              ADR SERVICES, INCORPORATED
 2
 3
 4    CARL RINSCH, an individual;    )
      HOME VFX, a California         )
 5    corporation,                   )
                                     )
 6              Claimants,           )
                                     )
 7    vs.                            ) Case No. 22-6311-RJM
                                     )
 8    ICE CREAM FRIDGE, LLC, a       )
      Delaware limited liability     )
 9    company; NETFLIX               )
      ENTERTAINMENT, LLC, a          )
10    Delaware limited liability     )
      company, and DOES 1 through    )
11    10,                            )
                                     )
12              Respondents.         )
                                     )
13    _____  )
14
15
16                   VOLUME V
17            ARBITRATION PROCEEDINGS
18            Friday, November 10, 2023
19
20
21
22
23    Stenographically Reported by:
24    Stephanie Leslie
      CSR No. 12893
25
```

```
 1    BEFORE ARBITRATOR RITA  SUNNY  MILLER (RET.)
 2
 3    APPEARANCES OF COUNSEL:
 4
 5      For the Claimants:
 6         GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP
           By:  Robert E. Allen
 7              Joel Klevens
                Attorneys at Law
 8          10250 Constellation Boulevard, 19th Floor
            Los Angeles, California  90067
 9          (310)  553-3000
10
11      For the Respondents:
12         KING & SPALDING
           By:  Arwen Johnson
13              Jeffrey M. Hammer
                Jenny Pelaez
14              Brittany Litzinger
                Attorneys at Law
15          633 West Fifth Street, Suite 1600
            Los Angeles, California  90071
16          (213)  443-4345
17
18
19    ALSO PRESENT:
20         CARL RINSCH
21         ALLISON GIPSON, PARALEGAL
22         BRODERICK SCOTT, TECHNICIAN
23         LINDA BURROW, ESQ.
24
25
                                              1250
```

```
 1              ADR SERVICES, INCORPORATED
 2
 3
 4    CARL RINSCH, an individual;    )
      HOME VFX, a California         )
 5    corporation,                   )
                                     )
 6              Claimants,           )
                                     )
 7    vs.                            ) Case No. 22-6311-RJM
                                     )
 8    ICE CREAM FRIDGE, LLC, a       )
      Delaware limited liability     )
 9    company; NETFLIX               )
      ENTERTAINMENT, LLC, a          )
10    Delaware limited liability     )
      company, and DOES 1 through    )
11    10,                            )
                                     )
12              Respondents.         )
                                     )
13
14
15
16         Arbitration proceedings taken before Stephanie
17    Leslie, Certified Shorthand Reporter 12893, for the
18    State of California, commencing at 10:10 a.m., Friday,
19    November 10, 2023, at 1900 Avenue of the Starts, Suite
20    200, Los Angeles, California.
21
22
23
24
25
                                              1249
```



CONFIDENTIAL

NFLXSDNY00081696
USAO_RINSCH_00003045

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



| | |
|---|---|
| 11 | Q    Okay. But it looks like there was a |
| 12 | Ferrari? |
| 13 | A    Absolutely. |
| 14 | Q    And if you go down -- |
| 15 | A    Four Rolls-Royces. |
| 16 | Q    Four Rolls-Royces? |
| 17 | A    That's correct. |
| 18 | Q    All purchased in the late 2021 time frame? |
| 19 | A    Yes. |
| 20 | Q    And these purchases weren't necessary for |
| 21 | any part of "Conquest," were they? |
| 22 | A    Sorry. Ask that question again, please. |
| 23 | Q    These purchases weren't necessary for -- |
| 24 | A    Were not; is that what you said? |
| 25 | Q    Were not. |

1485

1486

1487

www.regalcourtreporting.com
866-228-2685



CONFIDENTIAL

NFLXSDNY00081755
USAO_RINSCH_00008077

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



1    A    No.  Of course they were.  That would be
2  fraud.  I would go to prison otherwise.
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1488

24    Q    Did you drive any of these cars
25  personally, Mr. Rinsch?

1489

1    A    You know, the ones that you see there at
2  what's called the F.C. Kerbeck & Son, I never ended
3  up seeing those because this all took a turn that
4  leads us here.  So I never received those or did
5  anything like that.
6        On the one that had the orange interior, I
7  did have that here.  And, you know, you don't let
8  these things sit, but you have to remember, I don't
9  own a car, for instance.  I drive Uber.  I'm not,
10  you know -- let's -- yeah.
11        I don't have a private jet.  I don't sleep
12  in a $600,000 bed.  I don't, like, tear around in a
13  Ferrari.  It's not who I am.  I wear the same
14  clothes every single day.
15        So the point is that the Kerbeck & Sons, I
16  never drove.
17        The Rusnak one, I drove, but not every
18  day.  It was during quarantine.  But you have to do
19  it every once in a while.
20        Same with a Ferrari or else it causes
21  problems, so to speak.
22

1491



CONFIDENTIAL

NFLXSDNY00081756
USAO_RINSCH_00008078

CARL RINSCH, et al. vs ICE CREAM FRIDGE, LLC, et al.
Transcript of Proceedings on 11/10/2023



10    Q    And where are the cars now, Mr. Rinsch?
11    A    They are sold.  I sold them.
12    Q    And where are the funds from the sale?
13    A    The funds from the sale operated overhead
14    and covered legal.
15    Q    When you say "legal," what legal?
16    A    Ta-da.  You know, we're sitting in it.
17    Q    So you sold the cars, and the funds are
18    being used in this lawsuit against Netflix?
19    A    They are, yes.



CONFIDENTIAL

NFLXSDNY00081757
USAO_RINSCH_00008079

# Exhibit J

Electronically FILED by Superior Court of California, County of Los Angeles 5/5/2022 4:23 PM Sherri R. Carter, Executive Officer/Clerk, By A. Gonzalez, Deputy Clerk

GOVERNMENT
EXHIBIT

7003

25 Cr. 085 (JSR)

NETFLIX_000030029

NFLXSDNY00030792

USAO_RINSCH_RELATIVITY_00030792



NETFLIX_000030030

NFLXSDNY00030793
USAO_RINSCH_RELATIVITY_00030793

NETFLIX_000030031

NFLXSDNY00030794
USAO_RINSCH_RELATIVITY_00030794

NETFLIX_000030032

NFLXSDNY00030795
USAO_RINSCH_RELATIVITY_00030795

NETFLIX_000030033

NFLXSDNY00030796
USAO_RINSCH_RELATIVITY_00030796



NETFLIX_000030034

NFLXSDNY00030797
USAO_RINSCH_RELATIVITY_00030797



NETFLIX_000030035

NFLXSDNY00030798
USAO_RINSCH_RELATIVITY_00030798

NETFLIX_000030036

NFLXSDNY00030799
USAO_RINSCH_RELATIVITY_00030799



NETFLIX_000030037

NFLXSDNY00030800
USAO_RINSCH_RELATIVITY_00030800

# Exhibit K

NFLXSDNY00000015
USAO_RINSCH_RELATIVITY_00000015



NFLXSDNY00000016
USAO_RINSCH_RELATIVITY_00000016



NFLXSDNY00000017
USAO_RINSCH_RELATIVITY_00000017



NFLXSDNY00000018
USAO_RINSCH_RELATIVITY_00000018



NFLXSDNY00000019
USAO_RINSCH_RELATIVITY_00000019

NFLXSDNY00000020
USAO_RINSCH_RELATIVITY_00000020