UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------X

UNITED STATES OF AMERICA,                          Index No. 25-cr-85(JSR)

       -v.-

CARL ERIK RINSCH

       Defendant.
X-------------------------------------------------------X

## CARL ERIK RINSCH'S
## REPLY TO THE GOVERNMENT'S
## SENTENCING MEMORANDUM

LAW OFFICES OF
 DANIEL A. MCGUINNESS, PC
Daniel A. McGuinness
353 Lexington Ave, Suite 900
New York, NY 10016
(646) 360-0436
dan@legalmcg.com

ZEMAN & WOMBLE, LLP
Benjamin Zeman
20 Vesey Street, Suite 400
New York, NY 10007
(718) 514-9100
zeman@brooklynattorney.nyc

## Table of Contents

Introduction ................................................................................................. 1

Discussion .................................................................................................. 2

    A.    Carl Rinsch is Statistically Unlikely to Recidivate. ..................... 2

    B.    The Restitution Order Should Not Include Netflix's
        Attorney Fees. ................................................................................ 5

        1.    The Victim's Attorney's Fees for Participation in
                the Criminal Case should not be Added to the
                Restitution Order. ................................................................... 5

        2.    Netflix's Attorney's Fees in the Arbitration are
                not Recoverable under the MVRA. ........................................ 12

Conclusion................................................................................................. 14

## Introduction

This Reply addresses two issues raised in the Government's Sentencing Submission. The first concerns the selective usage of recidivism statistics. The government has submitted recidivism statistics to support its view that Carl poses a risk of recidivism that should be corrected with a 60-month sentence. The weight of the statistical evidence shows that Mr. Rinsch does not pose a significant risk of recidivism.

The defense also writes to respond to the government and Netflix's requests for restitution. Upon viewing Netflix's legal invoices, the amounts sought are entirely inappropriate. Only a small fraction of Netflix's billed legal fees—those tasks necessary to respond to government requests and prepare witnesses—should be considered for restitution. The amount requested reflects the full invoices that were submitted to the Court. It is the government's burden–not the Court's or the defense's–to submit an appropriate request for restitution. It has not done so.

The defense disagrees with the government's view of the 3553(a) factors in this case and how they bear upon sentencing. In particular, the collateral consequences faced by Mr. Rinsch are properly considered by the Court in fashioning the appropriate sentence. The defense rests on its prior submission for its position that these factors warrant a sentence far below the 60 months sought by the government.

1

## Discussion

### A. Carl Rinsch is Statistically Unlikely to Recidivate.

The government's submission relies on data from a Sentencing Commission report that supports its request for 60 months as it purportedly reveals that such a sentence decreases recidivism. However, the government does not discuss that earlier reports by the Commission repeatedly confirm that many of Mr. Rinsch's characteristics make him statistically unlikely to reoffend.

For example, the Sentencing Commission's March 2016 report *Recidivism Among Federal Offenders: A Comprehensive Overview*[1] (hereinafter "Recidivism Overview") explains how Mr. Rinsch's lack of criminal history is a significant determinant of recidivism risk. Offenders with zero criminal history points only reoffend at a rate of 30.2% compared with offenders with one criminal history point, who are just below 50%. *Id.* at 18. The 2021 report *Recidivism of Federal Offenders Released in 2010*[2] (hereinafter, "2021 Recidivism Report") by the Sentencing Commission revealed an even lower recidivism rate for zero-point offenders at 26.8%, and a still lower rate of 20.3% for individuals, like Mr. Rinsch, who have not had any prior contact with the criminal justice system. *Id.* at 28.

Another factor making Mr. Rinsch statistically unlikely to reoffend is his age. At 48 years old, the likelihood of recidivism for his age group is 35.9%, which is almost half that of an offender under 21 years old. Recidivism Overview at 23. Still,

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.
[2] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf.

2

if the statistics were more narrowly calibrated by age, Mr. Rinsch's percentage would certainly be even lower, since likelihood of recidivism decreases with age, and Mr. Rinsch is on the high end of his age group (41-50). *Id.*

Although the government mentions that fraud offenders recidivate 34.2% of the time, they are statistically less likely to recidivate than those who commit any other offenses. *Id.* at 20, fig. 8.



Additionally, as a college graduate, Mr. Rinsch is more unlikely to recidivate. College graduates reoffend at a rate of just 19.1%, nearly half the rate for individuals who only have "some college" and less than a third of those who did not graduate high school. *Id.* at 24, fig. 12.

3



Earlier reports by the Sentencing Commission show a different result than the one offered by the government. The 2016 study stated that offenders sentenced to less than six months imprisonment are by far the least likely to reoffend. Recidivism Overview at 22, fig. 10.

4

*Length of Federal Sentence Imposed*

Mr. Rinsch is statistically unlikely to reoffend based on his age, his education, his lack of criminal history and the nature of his offense. The combined effect of all these mitigating factors would undoubtedly lower the statistical risk even closer to zero. Specific deterrence is unnecessary in this case.

## B. The Restitution Order Should Not Include Netflix's Attorney Fees.

### 1. The Victim's Attorney's Fees for Participation in the Criminal Case should not be Added to the Restitution Order.

The exorbitant restitution sought by Netflix for its legal fees bolsters the reasoning of *United States v. Abram*s, 165 F.4th 784, 812 (3d Cir. 2026), which held that witness legal fees are not permissible under the MVRA. In *Abrams*, the court noted that "legal fees are fundamentally different from the modest attendance related expenses enumerated in § 3664A(b)(4), both in nature and scale." *Id.* at 814. The half a million dollars sought by Netflix is entirely untethered from the price of

5

"child care" and "transportation" explicitly named in the same subsection. As *Abrams* noted, "It would be unusual, to say the least, for Congress to smuggle so substantial a category of liability into a residual phrase appended to a subsection that is already ancillary to § 3663A(b)'s primary, offense-specific restitution provisions." *See also United States v. Clinesmith*, No. 23-20063-01-DDC, 2026 U.S. Dist. LEXIS 110535 (D. Kan. May 19, 2026) (adopting and extending *Abrams'* reasoning to disallow witness attorney fees under the MVRA).

The Second Circuit, however, permits witness legal fees under the MVRA so long as the victim was required to incur the fees to advance the investigation or prosecution of the offense. Not every category of attorney work product meets that essential burden, and several categories of attorney work product are excluded. *See e.g. United States v. Cuti,* 708 F. App'x 21, 24 (2d Cir. 2017); *United States v. Avenatti, 2022 U.S. Dist. LEXIS 27392, at *25 (S.D.N.Y. Feb. 14, 2022); United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 U.S. Dist. LEXIS 190029, at *13 (E.D.N.Y. Mar. 27, 2015).

The Netflix invoices include work beyond what was necessary to advance the investigation or prosecution. Counsel for Netflix submitted requested amounts based upon all its work performed for Netflix, without reducing for categories of work or expenses that are not recoverable by Second Circuit Case law. The defense has identified several categories of work that are not recoverable, including time spent corresponding with the defense; Netflix's own collection actions; attending

6

court proceedings and related travel; case monitoring; and miscellaneous expenses that appear to be unjustifiable.

The defense received Netflix's billing statements on June 16, 2026, and has not yet had sufficient time to catalog all inappropriate entries. The government bears the burden of proving the appropriateness of the amount sought. It has not done so. As demonstrated below, the invoices are replete with inappropriate entries that should not have been added to the total amount requested.

Under 18 U.S.C. § 3663A(c)(3)(B) a sentencing court is not required to order restitution where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." In *United States v. Hatfield*, No. 06-CR-550(JS)(AKT), 2015 U.S. Dist. LEXIS 190029, at *40-41 (E.D.N.Y. Mar. 27, 2015) the sentencing court relied on § 3663A(c)(3)(B) to find that "while it may be that some of the expenses incurred… are recoverable under the MVRA… justice is better served" by finalizing the restitution order "without otherwise burdening the sentencing process with a further evidentiary hearing." *See also United States v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006) ("Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause or amount of the victims' losses would unduly burden the sentencing process."); *United States v. Cassidy*, 569 F. App'x 30, 31 (2d

7

Cir. 2014) ("[I]t lies within the sound discretion of the district court to decide whether the factual issues underlying a restitution order are so complex as to unduly burden the sentencing process.") (citation omitted); *United States v. Cuti*, 766 F.3d at 199, 212 (2d Cir. 2014) ("On remand, the district court is free to exercise its discretion as to whether determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.") (internal quotation marks omitted)). Rather than untangling the substantial billing totals that have been submitted without regard to the proper standard, the Court should omit them entirely from already sizeable restitution order.

In seeking overly broad recovery for all legal services, Netflix advocates for continued reliance on *United States v. Gupta*, 925 F. Supp. 2d 581, 584 (S.D.N.Y. 2013), *aff'd,* 747 F.3d 111 (2d Cir. 2014) and dismisses any consideration of *Lagos v. United States*, 584 U.S. 577 (2018). Nike, in its capacity as a victim corporation, advanced this same argument, in *United States v. Avenatti,* 19 Cr. 373 (PGG), 2022 WL 452385, at *10 (S.D.N.Y. Feb. 14, 2022), *aff'd*, 81 F.4th 171 (2d Cir. 2023). The court correctly observed that in light of *Lagos*, "restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested or otherwise induced by the Government" and that any broader interpretation found in *Gupta* was no longer good law. *Avenatti*, 2022 U.S. Dist. LEXIS 27392, at *22-23 (citing *United States v. Razzouk*, No. 11-CR-430(ARR), 2021 U.S. Dist. LEXIS 73071, at * (E.D.N.Y. Apr. 15, 2021) (holding, after remand

8

to consider effect of *Lagos,* that legal costs covered by MVRA are only those incurred at government's request); *United States v. Napout,* No. 15-CR-252(PKC), 2018 U.S. Dist. LEXIS 198206, at *5 (E.D.N.Y. Nov. 20, 2018). Other courts in this Circuit also require that the work be in response to a government request. *See United States v. Sow,* No. 23-CR-593(VEC); 2025 U.S. Dist. LEXIS 195705, at *12 (S.D.N.Y. Oct. 2, 2025); *United States v. Rankin,* No. 18-CR-272(JAM), 2023 U.S. Dist. LEXIS 201417, at *11 (D. Ct. Nov. 9, 2023); *United States v. Medghyne Calonge,* No. 20-cr-523(GHW), 2022 U.S. Dist. LEXIS 98301, at *17-18, 31 (S.D.N.Y. Jun. 1, 2022). *See also United States v. Maynard,* 743 F.3d 374, 381 (2d Cir. 2014)("The victim expenses that are recoverable as restitution under 18 U.S.C. §3663(A)(b)(4) are the expenses the victim was required to incur to *advance the investigation or prosecution* of the offense.")

Netflix's communications with the defense were certainly not "invited, required, requested or otherwise induced by the Government" and did not "advance the investigation or prosecution." As such, those billing entries must be deducted. *See e.g.* Netflix Victim Impact Statement, Ex B (hereinafter "Netflix Invoices") at 44[3] (4/30/25 MVS), 49 (5/9/2025 ANE), 55 (6/4/25 ANE), 56 (6/16/25 MVS), 57 (6/30/25 MVS). Similarly, Netflix's own collection actions against Mr. Rinsch did were not requested by the government nor did they advance the prosesuction. The legal costs associated with collection actions against the defendant must be

---

[3] Citations to Netflix Invoices page refer to the pagination of the document submitted as Exhibit 2 and are listed with the date of service and attorney initials listed. Each citation lists five examples of the billing category and is not a complete set of the entries in that category.

9

deducted. *See e.g.* Netflix Invoices at 43 (4/7/25 MVS), 49 (5/7/25 ANE), 49 (5/9/25 MVS), 49 (5/16/25 ANE), 49 (5/19/25 MVS).

Similarly, without additional justification a victim's attorney's fees for monitoring criminal court proceedings, filings and attendance at trial are not subject to restitution. *See United States v. Cuti*, 708 F. App'x 21, 25 (finding an abuse of discretion to award restitution of legal fees for "monitoring" criminal proceedings and disallowing recovery of attorney fees for "attending proceedings, reviewing trial transcripts, generating summaries of trial events, and drafting press releases.")  Netflix has included many entries for attendance at court proceedings as well as travel costs to and from those proceedings. *See e.g.* Netflix Invoices at 43 (4/3/25 ANE) (billing $4,725 for travel time to attend arraignment), 44 (4/1/25 ANE)(billing $1,222.78 for plane tickets between LAX and NYC), 120 (12/9/25 ANE), 120 (12/10/25 ANE), 122 (12/15/25 ANE)(billing hundreds of dollars for car rides to and from trial).  Many entries appear to be nothing more than monitoring the status of the case and reviewing pleadings. *See* Netflix Invoices at 38 (3/31/25 ANE), 43 (4/3/25 MVS), 43 (4/8/25 MVS), 120 (12/8/25 MVS), 147 (3/4/26 MVS).

A substantial portion of Netflix's attorney fees is due to its litigation against compliance with the Grand Jury subpoena issued by the Government. In *Avenatti*, the victim corporation similarly sought to recover for legal fees related to its motions to quash subpoenas. 2022 U.S. Dist. LEXIS 27392, at *26-27. The court noted that the victim corporation moved to quash the subpoena to protect its own information and that a "corporation acting out of self-preservation cannot turn

10

around and have its costs reimbursed through restitution." *Id.* (citing *United States v. Napout*, No. 15-CR-252(PKC), 2018 U.S. Dist. LEXIS 198206, at *4 (E.D.N.Y. Nov. 20, 2018)). Similarly, Netflix sought to protect its own public image and shield information from view by unsuccessfully moving to quash the Grand Jury subpoena under the theory that an arbitration's confidentiality agreement trumped a federal Grand Jury subpoena. Its self-preserving actions are not properly added to a restitution judgment.

Many entries are commingled, containing both compensable and non-compensable items. *See e.g.* Netflix Invoice at 56 (6/16/25 MVS), 57 (6/30/25 ANE), 70 (8/15/25 MVS), 71 (8/22/25 ANE), 105-06 (11/19/25 MVS). "Block billing" is permitted in this Circuit only where the records allow the court to conduct a "meaningful review of the hours requested." *Restivo v. Hesseman*, 846 F.3d 547, 591 (2d Cir. 2017). Where, as here, the entries contain recoverable and nonrecoverable items, courts in this District subtract the full billing amount for the commingled entries. In *United States v. Avenatti,* 19 Cr. 373 (PGG), 2022 WL 452385, at *10 (S.D.N.Y. Feb. 14, 2022), *aff'd*, 81 F.4th 171 (2d Cir. 2023) the sentencing court declined to award a victim's legal fees for commingled entries, holding, "This Court cannot now attempt to extricate recoverable expenses from non-recoverable expenses in blockbilling entries." *See also United States v. Hild*, No. 19-CR-602 (RA), 2024 U.S. Dist. LEXIS 171051, at *28 (S.D.N.Y. Sep. 23, 2024) (citing *Avenatti* and refusing to award victim attorney fees under MVRA for commingled billing entries); *United States v. Billimek*, 2024 U.S. Dist. LEXIS 108837, at *10

11

(S.D.N.Y. June 19, 2024) (same). As such, any commingled entries must be deducted from the total amout.

Netflix includes even minor, unjustifiable fees in Mr. Rinsch's proposed judgment. These include charges for in-flight Wi-Fi (*see e.g.* Netflix invoices at 108 (11/12/25), 122 (12/11/25)), airline seat change (*id.* at 122(12/8/25)), flight change fee (*id.* at 122 (12/10/25)), and hundreds of dollars' worth of limousine charges from weeks after trial concluded (*id.* at 123 (12/30/25)). The improper entries should be rejected.

### 2. Netflix's Attorney's Fees in the Arbitration are not Recoverable under the MVRA.

Netflix persists in its claim that it is owed legal fees for defense of an arbitration that preceded the criminal case. Netflix essentially argues that the arbitration was part of the crime for which the defendant was convicted, and its litigation costs should be made part of the restitution order. The government does not join this misguided argument.

Netflix argues that the defendant's litigation against Netflix two years after the transfer of the funds was "lulling" behavior that was part of the criminal scheme. *See* Netflix Ltr at 5 ("Netflix paid attorney's fees for the defense of Rinsch's arbitration claims, which was a part of Rinsch's ongoing scheme to defraud and lull Netflix.") "Lulling" is behavior intended to give the victim "a false sense of security, postpone inquiries or complaints, or make the transaction less suspect…" *United States v. Angelilli*, 660 F.2d 23, 37 (2d. Cir. 1981). The suggestion that Mr. Rinsch

sued Netflix–and engaged in voluminous discovery including depositions–to put them at ease and dissuade them from investigating his behavior is absurd. Additionally, Netflix's argument entirely disregards this Court's Opinion which held that, although "lulling" behavior is admissible to show intent of a fraud, the crime of wire fraud is making a false statement to *obtain* property, not to *retain* it. *See* Opinion, ECF No. 74.

Netflix's forced analogy to *United States v. Avenatti*, 81 F.4th 171 (2d Cir. 2023) fares no better. In *Avenatti*, the Court ordered attorney's fees where the victim company, Nike, hired an attorney to attend a meeting that the defendant set up for the purposes of extorting Nike, which was the crime of conviction. *Id.* at 207-211. Here, Netflix is not seeking attorney's fees related to the negotiations underlying the $11 million transfer. It is seeking attorney's fees for an arbitration that occurred years later.

A closer case is found in *United States v. Cuti*, 778 F.3d 83 (2d Cir. 2014).[4] In *Cuti*, the defendant initiated an arbitration against the victim company, Duane Reade, prior to facing criminal charges for securities fraud. *Id.* at 87. Duane Reade prevailed in the arbitration and brought the defendant's criminal actions as CFO of the company to the attention of the United States Attorney's Office. *Id.* Following his criminal conviction, Duane Reade sought reimbursement for legal fees expended in the arbitration. *Id.* at 93. The court, allowing for pre-*Lagos* compensable investigative work, held that the work spent purely on the arbitration was not recoverable. *Id.* at 95. *See*

---

[4] Although *Cuti* addressed claims under VWPA, *Cuti* relied on MVRA caselaw and observed "the provisions of the VWPA and MVRA are nearly identical in authorizing an award of restitution." *Id.* at 94 (quoting *United States v. Battista*, 575 F3d 226, 230 (2d Cir. 2009)).

13

*also United States v. Cuti*, 708 Fed. App'x 21, 23 (2d Cir. 2017) (*Cuti II)* ("Specifically, we advised that investigative work performed by law firms in furtherance of the civil arbitration would not be compensable…"). As in *Cuti*, Netflix may not now seek attorney's fees for defending against an earlier arbitration despite similarities of the underlying proceedings.

## Conclusion

For the foregoing reasons, Carl Rinsch respectfully submits that a non-incarceratory sentence would be sufficient but not greater than necessary to achieve the ends of justice and that Netflix's attorney's fees should not be added to the order of restitution.

Dated: New York, NY
        June 23, 2026

Daniel A. McGuinness
353 Lexington Ave, Suite 900
New York, NY 10016
(646) 360-0436
dan@legalmcg.com

Benjamin Zeman
20 Vesey Street, Suite 400
New York, NY 10007
(718) 514-9100
zeman@brooklynattorney.nyc